Lois V. BAKER, Administratrix of the
Estate of Raymond E. Baker,
deceased, Appellant,

v.

David P. WERNER, M.D., and Valley
Hospital Association, Inc., Appellees.

No. 5753.

Supreme Court of Alaska.

Aug. 6, 1982.

Rehearing Denied Dec. 22, 1982.

L. Ames Luce, Kelly & Luce, Anchorage, for appellant.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellee David P. Werner, M.D.

Mark L. Figura and Richard A. Helm, Burr, Pease & Kurtz, Anchorage, for appellee Valley Hospital Association, Inc.

Before RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

## OPINION

COMPTON, Justice.

This appeal concerns a wrongful death claim. Raymond Baker died on August 6, 1976 from the combined effects of Darvon and alcohol. Lois Baker, the decedent's wife, sued Dr. David Werner and Valley Hospital Association (Hospital), alleging that they negligently caused Raymond Baker's death. The trial court entered judgment in favor of Dr. Werner and the Hospital in accordance with a unanimous jury verdict. We affirm.

## I. FACTUAL BACKGROUND

Raymond Baker, an employee of the Matanuska-Susitna Borough, was fifty-five years old when he died on August 6, 1976. In poor health in the preceding several years, Baker regularly took Darvocet N 100, a pain medication containing Darvon.

At approximately 5:00 on the morning of August 6, Baker awoke his wife and told her that he "took too many pills." Lois Baker testified that her husband first said that he had consumed thirty pills. Mrs. Baker called the hospital and expressed in general terms her concern that Baker had taken an excessive amount of medication. Nurse Elliot, an employee of the Hospital, advised Mrs. Baker to bring her husband to the hospital for observation. While en route to the hospital, Baker told his wife he had consumed twenty pills, not thirty. Mrs. Baker did not detect any sign that her husband was intoxicated.

The Valley Hospital, a small twenty-four bed facility, provides emergency medical treatment at all hours through an arrangement with the three physicians in Palmer. One of the three physicians is on-call at all times. If a patient seeks medical treatment at a time when no doctor is at the hospital, the attending nurse calls the physician on-call, and the physician then determines whether the situation is an emergency which requires immediate medical attention. This procedure is typical of small health facilities. Dr. Werner was on-call during the early morning of August 6, 1976. Nurse Elliot, an experienced RN, was the attending staff.

Baker arrived at the hospital at approximately 5:30 a. m. Nurse Elliot testified that while Baker's speech was somewhat slow and slurred, Baker was able to comprehend and answer her questions. He informed her that he had consumed ten Darvocet pills. Mrs. Baker, present during the entire examination, did not tell the nurse that Baker had told her that he had consumed substantially more pills. Nurse Elliot took Baker's pulse and blood pressure. His vital signs were within the lower boundaries of the "normal" range for a man of Baker's age and weight. Nurse Elliot did not check the medical records available at the hospital, nor did she pursue any other procedures to test sensorium impairment.

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

Nurse Elliot then called Dr. Werner at home. She informed Dr. Werner that Baker said he had taken ten Darvocet pills over a period of time to relieve a severe pain in his right side. Nurse Elliot described Baker's ability to answer questions and conveyed Baker's vital signs. During the conversation, Mrs. Baker interrupted the nurse to add that her husband "may have taken half a bottle." Lois Baker testified that she made the statement "to get [Nurse Elliott's] attention." It is uncertain whether the nurse relayed this information to Dr. Werner. The nurse testified that she repeated the statement to the doctor; the doctor disputed that testimony, and testified instead that the nurse said that Baker possibly consumed a "few more" than ten pills.[1] Dr. Werner concluded that Baker's condition did not pose an emergency which required immediate attention. He instructed the nurse to advise the Bakers to return home. Mrs. Baker testified that she was "relieved" when the nurse said that the doctor felt that there was no danger from taking ten Darvocet pills.

Raymond and Lois Baker returned to their home. He walked from the car to their home, upstairs to the bathroom, and then into their bedroom. Lois Baker awoke at 7:30 in the morning to discover that her husband was not breathing. Emergency medical personnel arrived shortly thereafter, but were unable to revive Raymond Baker.

The autopsy disclosed extremely high levels of Darvon and alcohol in Baker's blood. Additional amounts of Darvon had not as yet been absorbed. Experts offered substantially varying estimates as to how much medication and alcohol Baker consumed in order to reach the observed toxicity levels. There was a consensus that ten Darvocet pills taken over a six-hour period would not be life threatening. Appellees presented evidence that Baker may have consumed as many as fifty pills and as much as twenty ounces of alcohol. Mrs. Baker presented evidence that her husband may have consumed substantially fewer pills.

Darvon typically takes one to two hours to reach its peak effect. Mrs. Baker testified that she was aware that her husband left the bedroom on only three occasions on the night in question, the last of which occurred at 3:30 in the morning. Mrs. Baker argued to the jury that her husband consumed all the medication prior to the visit to the hospital, and that proper observation of Baker's sensorium impairment would have disclosed that the debilitating effect of the drug was increasing during the visit to the hospital. In contrast, Dr. Werner and the Hospital presented testimony that they acted reasonably given the information known to them, and, alternatively, that Baker may have consumed the fatal combination of Darvon and alcohol after he returned home from the hospital.

Following a nine day trial, the jury returned a verdict in favor of Dr. Werner and the Hospital. The court entered judgment, and denied Baker's motion for a new trial. Lois Baker presents five issues on appeal: (1) that the jury verdict was inconsistent; (2) that Jury Instruction No. 22 was prejudicial; (3) that the court improperly rejected an enterprise theory of liability; (4) that the cross-examination of an expert witness was improperly restricted; and (5) that it was improper to instruct the jury on comparative negligence.

## II.  JURY VERDICT

The principal issue raised on appeal is whether the jury verdict was inconsistent. The court presented the jury with a special verdict form,[2] the first question of which provided:

1. Mrs. Baker's testimony did not conclusively corroborate either position. At one point in her testimony, Mrs. Baker testified that she only heard the nurse begin to convey the information to the doctor, but that she walked away without hearing whether the "half a bottle" statement was repeated. Later in her testimo-ny, Mrs. Baker asserted that she in fact heard the nurse tell the doctor that she had said that Mr. Baker may have taken as many as half a bottle.

2. We note that given the jury's response to the first interrogatory, the special verdict form employed by the parties did not, as a practical

Were the following named defendants or any of them negligent? David P. Werner, M.D., Valley Hospital Association, Inc. Answer yes or no by placing a mark in the appropriate box after the name of each defendant.

Answer: Defendant David P. Werner, M.D., no. Defendant Valley Hospital Association, Inc., no.

The verdict is necessarily inconsistent, Baker argues, because it is uncontroverted that Mrs. Baker interrupted Nurse Elliot's phone conversation with Dr. Werner to interject that Mr. Baker "may have taken half a bottle [of pills]." Baker's position is that the conflict in testimony establishes that either the doctor or the Hospital had to be negligent. Were the jury to believe that the nurse conveyed the "half a bottle" statement, it would have been negligent for Dr. Werner to fail to take appropriate action.[3] Alternatively, were the jury to believe Dr. Werner's version of the phone conversation, the nurse's failure to accurately relay the information would constitute negligence.

■ Because of the asserted inconsistency in the jury's verdict, Baker claims that the lower court erred in denying her motion for a new trial.[4] In review of a trial court's exercise of its discretion in denying a motion for a new trial, our scope of review is restricted. If, viewing all the evidence in the light most favorable to the non-moving parties, there is an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. *Bailey v. Lenord*, 625 P.2d 849, 856 (Alaska 1981); *City of Palmer v. Anderson*, 603 P.2d 495, 501 (Alaska 1979); *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978). Our inquiry, therefore, is whether there was an evidentiary basis to support the jury's determination that neither Dr. Werner nor the Hospital was negligent.

■ We conclude that the jury verdict is not inconsistent. To be sure, there is a conflict in the testimony. That conflict alone, however, does not establish that one of the parties was negligent. If we assume that the jury resolved the credibility dispute in favor of the doctor, for example, the dispositive question is whether it would be negligent as a matter of law for Nurse Elliot to rephrase the interjection from "half a bottle" to a "few more." The only specific figure known by Nurse Elliot was Raymond Baker's statement that he had taken ten pills over a period of six and one half hours. Baker appeared capable of understanding and answering the nurse's questions. He did not appear confused or hesitant. Nurse Elliot testified that when Dr. Werner "asked how [Raymond Baker] looked ... I told him that he was alert, answering questions, and looked a little bit groggy, or sleepy, but [that] he was answering questions clearly." Viewed in the context of the facts known to Nurse Elliot, the statement concerning "half a bottle" may

matter, differ substantially from a general verdict. It would have been preferable in the present case had the jury addressed each of the significant factual matters in dispute. In particular, some of the issues pursued on appeal may have been foreclosed had the jury addressed the causation issue.

3. Dr. Werner testified that had he been aware of Mrs. Baker's statement that her husband may have taken half a bottle, of Mr. Baker's downwardly revised estimates of how many pills he had taken, or even of the fact that Mr. Baker had at one point discussed his contemplation of suicide with another local doctor, he would have taken further action.

4. We note that Baker raises this issue on appeal in an imprecise fashion. Baker directly challenges the jury verdict. In our view, we can only address this issue in terms of whether it was an abuse of discretion for the trial court to deny Baker's motion for a new trial. *See City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 225 (Alaska 1978); *Heacock v. Town*, 419 P.2d 622, 623–24 (Alaska 1966). In Baker's memorandum in support of her motion for a new trial, however, the alleged inconsistency in the jury verdict was clearly set forth. Moreover, Baker designated the court's denial of her motion for a new trial in her points on appeal. *But cf. Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 7 n.8 (Alaska 1979) (issues specified in the points on appeal are deemed abandoned if not discussed in appellant's brief). In these circumstances, we think it appropriate to assess whether the trial court abused its discretion in denying Baker's motion for a new trial.

not have necessarily alerted the nurse that substantially more than ten pills may have been consumed. We note that Nurse Elliot's testimony does not establish what meaning Nurse Elliot attached to the "half a bottle" statement. In this regard, the jury may have considered an expert's testimony that "most physicians don't prescribe more than twenty [Darvocet] at one time." Further, Nurse Elliot herself had taken Darvon at one time, and that prescription contained approximately twenty-four pills. While a statement concerning the number of pills consumed in a possible drug overdose situation is undeniably critical information, we believe that the question of whether it would be negligent for the nurse to rephrase the interjection is a matter particularly suitable for jury resolution. Similarly, whether it was reasonable for Dr. Werner to fail to respond to the statement that Baker may have taken a "few more"

than ten pills is also a matter for the jury to determine.[5] Though we may well have decided the question differently, we conclude that there was an adequate basis for the jury to find that both Dr. Werner and the nurse acted reasonably under the circumstances.[6]

## III. INSTRUCTION NO. 22

■ Baker next argues that Instruction No. 22 impermissibly prevented the jury from assessing the propriety of Dr. Werner's judgment. Instruction No. 22 provided:[7]

A physician and surgeon is not negligent merely because he makes a mistake or errs in judgment in the matter for which he is engaged.

However, if the physician and surgeon was negligent as defined in these instruc-

---

**5.** In the same vein, had the jury resolved the credibility dispute in favor of the nurse, the question would be whether it was negligent as a matter of law for Dr. Werner to fail to take action upon learning that Baker "may have taken half a bottle." We note that the jury may properly discredit Dr. Werner's testimony that he would have taken further action had he heard the "half a bottle" statement. *See supra* note 3. Quite plainly, it is for a jury to assess a physician's conduct in responding to such a statement in the context of a particular factual setting.

**6.** In light of our disposition of the inconsistent verdict issue, several other arguments raised by Baker can be rejected summarily. Baker first argues that the lower court erred by rejecting her "enterprise" theory of liability. The generally accepted rule is that where an employment relationship exists between the doctor and the hospital, the hospital is liable under the respondeat superior doctrine for any negligence or malpractice which results in injury to a hospital patient. *Bing v. Thuning*, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3 (N.Y.1957); *see Fruit v. Schreiner*, 502 P.2d 133, 138–42 (Alaska 1972). *See generally* Annot., 69 A.L.R.2d 305 (1960); D. Harney, Medical Malpractice 6.5 (1973). Also, where a patient reasonably believes that services were in fact being rendered by an employee of the hospital, courts increasingly hold the hospital vicariously liable under a doctrine labeled either "ostensible agency," "apparent agency" or "agency by estoppel." *Mehlman v. Powell*, 281 Md. 269, 378 A.2d 1121 (1977); *Adamski v. Tacoma Gen. Hosp.*, 579 P.2d 970 (Wash.App.1978). *See generally* Comment, The Hospital-Physician Relation-

ship: Hospital Responsibility for Malpractice of Physicians, 50 Wash.L.Rev. 385 (1975). Given the finding that neither the doctor nor the hospital was negligent, any theory of vicarious liability is irrelevant. Further, we also disagree with Baker's contention that even though the jury found both Dr. Werner and the Hospital not negligent, the "enterprise" may nonetheless have acted beneath the requisite standard of care. *See Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687 (1944). The focus of the litigation below was on how the "enterprise" dealt with one critical piece of information—Mrs. Baker's statement that Mr. Baker may have taken "as many as a half a bottle" of pills. The conduct of both Nurse Elliot and Dr. Werner was plainly in dispute. Thus, we discern no aspect of the "enterprise" which was obscured from the jury's consideration and which, therefore, was not subsumed in its determination of no negligence.

We reject Baker's argument that it was improper for the court to give a comparative negligence instruction. Since the jury found neither Dr. Werner nor the Hospital negligent, it did not reach the issue of comparative negligence. Accordingly, even were such an instruction improper, any error was harmless. Alaska R.Civ.P. 61; *Hatfield v. Universal Services, Inc.*, 622 P.2d 984, 985 (Alaska 1981); *see Shannon v. City of Anchorage*, 478 P.2d 815 (Alaska 1970).

**7.** Instruction No. 22 is modeled after BAJI 6.02, California Jury Instructions Civil 179 (6th rev. ed. 1977).

tions, it is not a defense that he did the best he could.

Baker's argument is that since the alleged misconduct of Dr. Werner concerned errors of judgment, the practical effect of the instruction was to direct a verdict in favor of Dr. Werner.

We disagree. Even though Instruction No. 22 was erroneous,[8] since other jury instructions plainly instructed the jury to evaluate Dr. Werner's conduct, any error was harmless. Alaska R.Civ.P. 61.[9] In particular, Instruction No. 14 set forth the burden of proof established for malpractice actions by AS 09.55.540. In sum, there is little doubt that the conduct of Dr. Werner was properly considered by the jury.

## IV. CROSS EXAMINATION OF EXPERT WITNESS

■ Baker submits that the superior court improperly limited the cross-examination of Dr. Wieland, an expert called by Dr. Werner. Dr. Wieland testified on direct examination that in his professional opinion Dr. Werner acted reasonably. Baker, on cross-examination, sought to elicit from Dr. Wieland his opinion as to whether the nurse's conduct fell below the applicable standard of care.

Cross-examination is generally limited to matters raised on direct examination. Alaska R.Evid. 611(b). After considering Baker's offer of proof outside the presence of the jury, the court ruled that the question of whether the nurse acted reasonably was beyond the scope of the direct exami-

nation. Further, noting that the question actually concerned a matter which was clearly part of Baker's case-in-chief, the court declined to exercise its discretion to allow Baker to pursue more expansive cross-examination. The court did permit Baker, however, to question Dr. Wieland about whether his opinion of Dr. Werner's conduct would vary if Dr. Werner had known that the nurse did not follow certain procedures.

We conclude that it was not an abuse of discretion for the trial court to restrict the scope of the cross-examination of Dr. Wieland. To the contrary, the court allowed Baker to adequately explore the foundation of Dr. Wieland's testimony. See Alaska Airlines v. Sweat, 568 P.2d 916, 930–31.[10]

The judgment of the superior court is AFFIRMED.

BURKE, C. J., not participating.

MATTHEWS, Justice, dissenting, with whom RABINOWITZ, Justice, joins.

It is uncontroverted that Mrs. Baker told Nurse Elliot that Mr. Baker may have taken a half a bottle of pills. Elliot may have relayed this information to Dr. Werner. If so, Dr. Werner had the duty, as he acknowledges, to take further action. If Elliot did not communicate this critical statement to Dr. Werner she plainly was negligent for failing to do so.

Today's opinion rejects these conclusions. It reasons, first, that if Dr. Werner were told that Mr. Baker may have taken a half a bottle Dr. Werner might have been justi-

---

8. *See Maxwell v. Olsen*, 468 P.2d 48, 54–55 (Alaska 1970); *Alaska Brick Co. v. McCoy*, 400 P.2d 454, 455 (Alaska 1965); *Mitchell v. Knight*, 394 P.2d 892, 895–96 (Alaska 1964); *Harrison v. Garner*, 379 P.2d 948, 949 (Alaska 1963).

9. Civil Rule 61 provides:
   Harmless Error.
   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action ap-

pears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

10. We note that Baker declined the opportunity to call rebuttal witnesses. Presumably, Baker could have called Dr. Wieland as a rebuttal witness to express his opinion as to the nurse's conduct. As a result, even were the court's evidentiary ruling unduly restrictive, any error would have been harmless. Alaska R.Civ.P. 61; *City of Kotzebue v. Ipalook*, 462 P.2d 75, 78–79 (Alaska 1969).

fied in ignoring the statement. That conclusion, however, is not one which a reasonable jury could have reached for all the evidence on the point was to the effect that the doctor had the duty to take further action (as opposed to sending the patient home) if he had information that half a bottle of pills may have been ingested. The majority opinion's other explanation is that, assuming Elliot did not tell the doctor that Baker may have taken half a bottle, her omission might have been reasonable. This too, is unpersuasive. All of the testimony relating to the standard of care of a nurse in this situation was that the nurse had the obligation to pass the information relating to the possible consumption of one half a bottle of pills on to the doctor. She is no more free than the doctor would be to guess that half a bottle means ten pills, or a few more, or any particular nonlethal dose.[1]

For these reasons I conclude that the jury's verdict was necessarily inconsistent and that a new trial is required.

1. In fact, Baker's prescription was filled in bottles containing 100 pills. The evidence was that 30 pills would be lethal and 20 would be life threatening.