Frank H. **LOOF**, Appellant,

v.

Warren **SANDERS**, Appellee.

No. 7282.

Supreme Court of Alaska.

Aug. 3, 1984.

Kurt M. LeDoux, LeDoux & LeDoux, Kodiak, for appellant.

Mark C. Manning, Bradbury, Bliss & Riordan, Inc., Juneau, for appellee.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

In the early morning of July 28, 1981, Frank Loof fell off a dock ladder while boarding a boat owned by Warren Sanders. Loof had been hired by the "skipper" of the boat, Frank Ahsoak, shortly before the accident. Loof sued Sanders for the injuries he suffered in his fall. A jury found that Loof's injuries had been caused solely by his own intoxication, and denied relief. We affirm.

### I.

Late one July night in 1981, Frank Ahsoak entered the Breakers Bar in Kodiak, Alaska, in search of a new skiff man. Loof was recommended for the job by a friend. Over a beer, Ahsoak hired Loof as skiff man on the "Cape Cheerful" (Sanders' boat) at 12½% "off the top ... the usual crew share." Loof then left the Breakers Bar to get his gear. He returned on his motorcycle with two seabags. Loof then had "part of a beer" before leaving to store his motorcycle at a friend's house and to borrow a rifle. Upon returning to the Breaker's Bar, Loof finished his second beer and had a third. Ahsoak and Loof then left the Breakers Bar and headed to the Cape Cheerful.

Ahsoak went with Loof to the boat. While trying to descend the dock ladder to board the boat, Loof fell and was severely injured. It is unclear whether Loof was actually on the dock ladder, or simply on

the dock, when he fell.[1] Ahsoak pulled Loof from the water and Loof said that he was in pain. Ahsoak left Loof for 10 to 15 minutes, and proceeded to argue with another member of the crew about Loof's employment on the vessel. Loof finally collapsed, and Rodney Bruce Olsen, yet another crewman, went for help.

Paramedics from the Kodiak Fire Department arrived at approximately 3:40 a.m. Several of those attending Loof later testified that they detected alcohol on his breath. The only witness who claimed special qualification to make a determination of "intoxication" was Officer Douglas Kniss, then of the Kodiak Police Department. Kniss testified, through deposition, that it was his "impression" that Loof was intoxicated.

Loof was hospitalized for 11 days following the accident, and was still suffering from the injury at the date of trial. A physician testified that Loof had only a 50/50 chance of full recovery.

In his suit against Sanders, Loof argued three theories of liability: negligence of Ahsoak, the skipper; unseaworthiness of the "Cape Cheerful"; and "maintenance and cure" for injuries sustained in service of the ship. In conjunction with the instructions the superior court gave the jury, it also submitted to the jury special verdicts. The first question on the special verdict form read as follows:

QUESTION 1. Was Plaintiff's injury due solely to his own intoxication?

_____ (Answer yes or no)

If your answer was yes, do not answer any other questions on this form.

The jury answered "yes" to the question, and returned a verdict for Sanders.

The court accordingly entered judgment in favor of Sanders, and Loof moved for a new trial, arguing that the jury's verdict was against the weight of the evidence, and that he had been unfairly surprised by the testimony of Sanders' mother, Beryl Lassen. The superior court denied the motion for a new trial, and this appeal followed.

## II.

There is no dispute that this is a case where Alaska courts must apply substantive admiralty and maritime law.[2] Nor is there any dispute that Loof was a seaman employed to work aboard the Cape Cheerful at the time of his accident. As such, Loof is entitled to sue the vessel owner: (1) for maintenance, cure and lost wages if he was injured while approaching or boarding his vessel;[3] (2) for injuries resulting from unseaworthiness of the vessel;[4] and (3) for injuries resulting from negligence of the shipowner or master.[5]

Loof raises five issues on appeal: (1) whether the first interrogatory of the special verdict was prejudicial, confusing, and misleading; (2) whether the superior court erred in refusing to give a proposed jury instruction on the duty of a master to a seaman; (3) whether the testimony of Officer Kniss should have been excluded at trial; (4) whether the court erred in refusing a continuance to enable Loof's counsel to obtain a rebuttal witness to Mrs. Lassen's testimony; and (5) whether it was error to allow Sanders to introduce evidence of Loof's post-accident treatment for alcoholism.

---

1. At trial, Loof testified that he began to descend the recessed steel ladder, could not find one of the rungs, and lost his footing. In his prior deposition, Loof stated that he was not on the ladder when he fell.

2. *Cf. Shannon v. City of Anchorage,* 478 P.2d 815 (Alaska 1970) (applying admiralty law).

3. Characterized by Sanders' counsel as a "saltwater variety of workmen's compensation," the doctrine of maintenance and cure requires a

shipowner to pay the medical and living expenses of a seaman injured in the service of his ship. *See Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

4. *See The Osceola,* 189 U.S. 158, 173–74, 23 S.Ct. 483, 486, 47 L.Ed. 760, 764 (1903).

5. *See* 46 U.S.C.A. § 688 (1975), and *Cortes v. Baltimore Insular Line, Inc.,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932).

## A. *Special Verdict*

Loof's counsel objected to the first interrogatory.[6] In the course of this objection the following exchange took place between Loof's counsel and the superior court:

MR. LeDOUX: It says, was the plaintiff's injuries due solely to his own intoxication? The question 1 assumes that he was intoxicated. If we could put the words "if any" or perhaps the court could just say to the jury because the question 1 is this way doesn't necessarily mean Mr. Loof was intoxicated.

THE COURT: You can argue that to the jury. We're going to have to have that in there.

MR. LeDOUX: Well, can I put the words "if any" after intoxication?

THE COURT: No.

Loof argues that this particular interrogatory was prejudicial, confusing and misleading to the jury because it assumes Loof was intoxicated. He claims that intoxication was a factual issue for the jury, and that an assumption of intoxication deprives him of his constitutional right to a jury trial. Loof argues that the denial of this right warrants a new trial.

6. Question 1 read in full: "Was plaintiff's injury due solely to his own intoxication? _____ (Answer yes or no)"

7. Alaska Rule of Civil Procedure 61 provides as follows:

*Rule 61. Harmless Error.* No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

We reject Sanders' argument that Loof did not properly object to the special interrogatory. Loof's objection to the wording of Question 1 made the superior court aware of the alleged error. Civil Rule 51(a), which governs the way in which objections to instructions must be preserved for appeal, requires no more. *Alaska*

Sanders correctly points out that in order to prevail upon appeal, Loof must show prejudicial error.[7] To do so, Loof must demonstrate that the error, if any, had "substantial influence" on the outcome of the case.[8] In assessing the effect of an error, "the members of this court must necessarily put themselves, as nearly as possible, in the position of the jury in order to determine whether, as reasonable men, the error committed probably affected their verdict." *Love v. State,* 457 P.2d 622, 631 n. 15 (Alaska 1969).

In deciding whether or not Question 1 misled the jury, we must examine the special verdict in the context of all the instructions given to the jury. Sanders argues that other jury instructions rendered any error harmless, citing *Baker v. Werner,* 654 P.2d 263 (Alaska 1982). In *Baker,* this court held that although one instruction was erroneous, other jury instructions plainly instructed the jury to do that which the erroneous one did not, and so rendered the error harmless. *Id.* at 268.

We have also used such an approach to review denials of requested interrogatories. In *Patterson v. Cushman,* 394 P.2d 657, 664–65 (Alaska 1964), we recognized that under Civil Rule 49[9] the trial judge has

*International Industries v. Musarra,* 602 P.2d 1240, 1243 & nn. 1, 2 (Alaska 1979).

8. *Martinez v. Bullock,* 535 P.2d 1200, 1206–07 (Alaska 1975).

9. Civil Rule 49 provides in part:

(b) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury

discretion to decide both the number and form of interrogatories to accompany a general verdict. We held in *Patterson* that the superior court did not abuse that discretion by denying plaintiff's requested interrogatories, where the interrogatories and instructions actually given to the jury fairly presented the controverted issue. *Id.* at 665 & n. 26.[10] A similar approach is appropriate in evaluating alleged errors in interrogatories incorporated in a special verdict.

 Several of the jury instructions given clearly informed the jury that the question of Loof's intoxication was for it to decide. Instruction 48 read as follows:

There has been evidence to the effect that the plaintiff had been drinking prior to the accident. You are the ones to determine finally what if any effect this may have had in bringing about the accident.

If you find from your consideration of all the evidence in this case that the Plaintiff fell from the dock and was thereby injured owing solely to his intoxicated condition, then he is not entitled to maintenance and cure.

It is immaterial that Plaintiff's injury may have been solely caused by his own negligence other than intoxication where recovery of maintenance and cure is concerned.

Similarly, Instruction 49 read as follows:

Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider together with other facts and circumstances in evidence in determining whether or not he was negligent or contributorily negligent. Intoxicating is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person.

In light of these instructions, we conclude that the superior court's refusal to append the words "if any" to Question 1 of the special verdict was harmless error, if it was error at all. *See Alaska Children's Services, Inc. v. Smart,* 677 P.2d 899, 903 (Alaska 1984).[11]

---

retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(c) *General Verdict Accompanied by Answer to Interrogatories.* The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict....

**10.** *See also Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 91 (Alaska 1974) (instruction rectified potential error in wording of interrogatory).

**11.** Despite the apparent agreement of the parties that a seaman's intoxication defeats his claim for maintenance and cure, we note that the authority on this question is far from settled. Some authorities deny maintenance and cure where a seaman's intoxication caused his injury. *See, e.g., Barlow v. Pan Atlantic S.S. Corp.* 101 F.2d 697 (2nd Cir.1939); *The S.S. Berwindglen,* 88 F.2d 125 (1st Cir.1937); Annot., 95 L.Ed. 511, 515 (1950). However, the Supreme Court of the United States' decisions dealing with this subject suggest that resolution of the issue is somewhat more complex. In *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the Court recognized that injuries caused by the seaman's intoxication are generally not actionable under the maintenance and cure doctrine, but then observed that the rule "on occasion ... has been qualified in recognition of a classic predisposition of sailors ashore." *Id.,* 318 U.S. at 731, 63 S.Ct. at 934, 87 L.Ed. at 1113. In *Warren v. United States,* 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951), the Court held that a seaman who had consumed part of a bottle of wine, leaned out from a balcony adjoining a dance hall, and fallen when an iron rod he was holding on to came loose, was still entitled to recover maintenance and cure. In so ruling, the Court noted that "the amount of wine consumed hardly permits a finding of intoxication." 340 U.S. at 528, 71 S.Ct. at 435, 95 L.Ed. at 509. *See also Vella v. Ford Motor Co.,* 421 U.S. 1, 4, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682, 685 (1975) (only "culpable misconduct" on seaman's part will relieve shipowner of liability for maintenance and cure).

The key to reconciling the cases on this issue seems to be whether the seaman's intoxication caused his injuries. *See Barlow v. Pan Atlantic,* 101 F.2d at 698. Where the trier of fact has found that the claimant's intoxication *caused his injuries,* recovery for maintenance and cure has been denied. While the question is not before us, we conclude that, given the jury's finding that Loof's intoxication was the sole cause of his

## B. Instruction on Master's Duty

■ Loof requested that the superior court give the jury the following instruction on a master's duty to his crew:

A master of a boat stands in "loco parentis" to a crewmember, that is, a master has a duty to look out for the safety of the crew. A master has a duty to warn crewmembers of any danger that is not readily apparent to a crewmember. The master of a boat owes this duty of care whether a crewmember asks for it or not.

The duty of care does not disappear because a crewmember might be intoxicated. A master has a duty to protect a crewmember from injuring himself whether the crewmember is sober or intoxicated. Failure to use such due care is negligence.

When I refer to the duty of a master to an intoxicated crewmember I am only referring to the law in general and you are not to infer that such discussion is evidence of any possible intoxication by plaintiff.

The superior court refused to give this instruction or to adopt it in a modified

form. Loof argues that the instruction is supported by law, and that it was error for the superior court to refuse to give it. Sanders contends: that Loof did not properly object to the superior court's refusal to give the instruction; that the evidence did not support such an instruction; and that other instructions given adequately covered the area of law in question. We conclude that, in light of the jury's finding that Loof's intoxication was the sole cause of his injury, any error that the superior court may have committed by refusing this instruction was harmless.

One of Loof's theories at trial was that Ahsoak was negligent in failing to warn Loof about the ladder's alleged defects. Loof argues that his proposed instruction on a master's duty would have given the jury a correct legal standard against which to evaluate Ahsoak's conduct. Such an allegation of error requires us to make a dual inquiry: first, was it error to refuse the instruction? Second, if it was error, was the error prejudicial error under Civil Rule 61? [12] Because we find the second inquiry dispositive, we will assume without deciding that it was error for the court to deny this proposed instruction.[13]

---

injuries, the denial of maintenance and cure in this case was proper. Further, Loof has waived any error on this point by affirmatively acquiescing in the statement of the law embodied in Question 1 of the special verdict, and in other relevant jury instructions. Under such circumstances, and in light of the diverse authority on this point, we decline to apply the doctrine of "plain error". *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 90 (Alaska 1974).

**12.** *See* note 7, *supra*, and the accompanying text.

**13.** We are not convinced that Loof's proposed instruction pertaining to a master's duty was necessary in this case. For one thing, the authority Loof relied upon is distinguishable. The primary case Loof cited in support of the instruction, *The Iroquois*, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955 (1904), concerned a master's duty to bring a seaman injured on the high seas into the nearest port. Emphasizing that the measure of a master's obligation will turn on the peculiar facts of each case, The *Iroquois* court deferred to "the concurring decisions of two subordinate courts upon questions of fact," 194 U.S. at 247, 24 S.Ct. at 643, 48 L.Ed. at 960, and upheld a judgment for the seaman. The case of *Mathews v. Halford, S.S. Letitia Lykes,*

374 F.Supp. 1003, 1005 (E.D.La.1973), includes a broad statement of a master's "very high duty of care and protection to his crew," but is so factually different from this case that its authority is questionable. In that case, a federal district court found no duty on a master's part to protect the black members of his crew from the discriminatory practices of Singapore immigration officials. Nor do two additional cases cited by Loof lend much support to his proposed instruction. *See Weissbach v. Matson Navigation Co.*, 345 F.Supp. 1176 (N.D.Cal.1972) (shipowner liable for failure to comply with OSHA regulation requiring a net under the gangway); *McDonough v. Buckeye S.S. Co.*, 103 F.Supp. 473 (N.D.Ohio 1951) (shipowner liable for death of an obviously drunken seaman, when another member of the ship's crew first undertook to help the victim get on board, but then abandoned him on a dock platform between water's edge and railroad tracks).

We also note that the jury was instructed that One test [for] determining whether ... a person was negligent is to ask ... whether ... a person of ordinary prudence ... would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction.

Applying the harmless error doctrine requires the reviewing court to determine whether the error had a substantial influence on the original judgment. *Martinez v. Bullock*, 535 P.2d 1200, 1206 (Alaska 1975). In other words, we must consider the circumstances of the superior court's refusal to give the proposed instruction, as well as determine the likelihood that a contrary decision by the court would have resulted in a different verdict.

Of particular significance to our decision in this case is the special verdict returned by the jury. By concluding that Loof's injury was "due solely to his own intoxication," the jury implicitly found that neither a defect in the ladder, nor any negligence of Ahsoak, contributed to Loof's accident. There is ample evidentiary support in the record for the jury's determination.

One need go no further than Loof's own testimony to find an "evidentiary basis"[14] for the jury's verdict. According to Loof's testimony, he had at least three beers that evening. More importantly, Loof testified in his deposition that he was not actually on the ladder when he fell; his feet were still on the dock. He testified that as he grabbed the top rung of the ladder, while standing on the dock, he fell. In light of this testimony by Loof, and the fact that the jurors had an opportunity to examine the dock ladder for themselves, the jury's finding that Loof's intoxication was the sole cause of his injury has an evidentiary basis.

Loof invites this court to speculate that had the jury been instructed that Ahsoak owed a heightened duty of care to Loof, it might have concluded that Ahsoak's failure to warn him of the ladder had contributed to his accident. We are not persuaded that the superior court's failure to so instruct the jury had a substantial influence on the verdict. Even if the jury had been instructed on a heightened duty, it is entirely possible that it would have concluded that Ahsoak had no duty to warn Loof about the ladder. The jurors might well have found that the ladder was not defective. Ahsoak testified that, although the ladder had been "pushed in," it was "a very solid ladder," and he had had no trouble using it. In light of the jury's finding that Loof's intoxication was the sole cause of his injuries, and the testimony of Ahsoak and other witnesses as to the condition of the ladder, we conclude that the superior court's failure to give Loof's requested jury instruction on a master's duty was not prejudicial error.

### C. Testimony of Officer Kniss

The parties agree that a lay witness can give opinion testimony on the issue of intoxication.[15] However, Loof argues that certain testimony of Officer Kniss to the effect it was his "impression" that Loof was intoxicated should have been excluded at trial. Loof makes two points in regard to Kniss' testimony: (1) Kniss did not make a sufficiently thorough examination of Loof to have a proper foundation for his opinion; and (2) an "impression" is not an opinion, and Evidence Rule 701 does not permit its introduction as evidence.[16]

---

Moreover, the jury was instructed that every boatowner or operator owes his crew a duty to keep dock ladders they may use to board the boat in a seaworthy condition, and that liability for breach of such a duty does not depend on the boatowner's knowledge of the unseaworthy condition. While these instructions did not specifically address the extent of a master's duty to his crew, they did give the jury some guidance in assessing liability both for Ahsoak's failure to warn Loof about the ladder, and for any defect that may have hindered safe use of that ladder.

**14.** *See City of Whittier v. Whittier Fuel and Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978).

**15.** Alaska Rule of Evidence 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

**16.** The relevant portions of Kniss' deposition include:

Q. All right, I notice on your police report here, and we're just referring to this for reference purposes since police reports are not admissible as evidence, that Mr. Loof was intoxicated.

A. That was my impression at the time.

■ We conclude that the questioned testimony was properly admitted. In treating a similar objection to the foundational adequacy of lay opinion on intoxication, the Supreme Court of Arizona, in *Esquivel v. Nancarrow*, 104 Ariz. 209, 450 P.2d 399, 403 (1969), stated that:

> The rule is well-settled, and nearly universal, that lay witnesses who have had a sufficient opportunity to observe a person may testify as to whether that person appears to be intoxicated.... Prior to asking the question, the examining attorney had the witness describe the extent of his observation. It is for the jury to determine the weight to be given the opinion.

(Citations omitted.) It is undisputed that Kniss arrived at the scene of Loof's accident shortly after Loof had been pulled from the water, and that Kniss had an opportunity to examine Loof, albeit cursorily, at that time. In these circumstances, we conclude that Kniss' testimony was admissible.[17] The weight of Kniss' testimony regarding Loof's state of sobriety was for the jury.

## D. *Refusal to Grant Continuance*

Loof asserts that he was unfairly surprised by the testimony at trial of Beryl Lassen, Sanders' mother. He claims that her testimony at trial was a radical change from what she had said in her deposition, and that he was unprepared to rebut her trial testimony. He contends that he properly moved for a continuance to obtain rebuttal testimony, and that the court committed reversible error by refusing to grant the continuance. Sanders asserts that Loof made no motion for continuance, and that even if he did, the motion was improp-

er because the superior court was not apprised of the reasons for it. Sanders also argues that Loof was not unfairly surprised by Lassen's testimony.

■ A trial court's refusal to grant a continuance will not be disturbed unless the movant is able to show that the court abused its discretion. The facts and circumstances of each case will determine whether there was an abuse of discretion and, if so, whether the complaining party was prejudiced. *Wright v. State*, 501 P.2d 1360, 1366 (Alaska 1972).

■ At trial, after the defendant rested, this dialogue took place between Loof's counsel and the superior court:

> THE COURT: Do you have any rebuttal, Mr. LeDoux?
>
> MR. LeDOUX: Your Honor, any rebuttal I have I'm not prepared for today. If we could take it up Tuesday? I do not....
>
> THE COURT: No. No, you may not.
>
> MR. LeDOUX: .... think there will be rebuttal ....
>
> THE COURT: No, you're going to do it today. Either that or you don't have any.
>
> (Pause)
>
> MR. LeDOUX: No, Your Honor, we have no rebuttal.

The record is devoid of any other attempt by Loof, whether in a motion or merely in a request, to have the case continued. It is clear from the exchange between the superior court and Loof's counsel that the court was not apprised of the reasons underlying Loof's request that he be given until the following Tuesday to prepare for his rebuttal. Under these circumstances, where no

----

.... ... [A]s I was questioning him I smelled a moderate odor of alcohol. There was a look in his eye—on his face—the best way I can describe it is the relaxed muscles that an intoxicated person's face has, red watery eyes. It was my impression that he was intoxicated, but I didn't make any good examination of it.

**17.** Loof's contention that Kniss' "impression" did not amount to an opinion under Rule of Evidence 701 is without merit. Webster's New

World Dictionary (2d Coll. Ed.1972) defines "impression" as "a notion, feeling or recollection, esp. a vague one." However, it defines "opinion" as an "impression." In addition, Evidence Rule 701 permits lay witnesses to testify in the form of both opinions and inferences. Kniss' use of the language, "[t]hat was my impression" does not alter the admissibility of his statement. *See* Ladd, Expert and Other Opinion Testimony, 40 Minn.L.Rev. 437, 440–41 (1956).

continuance was formally requested, and no reasons for granting a continuance were presented, we conclude that the superior court did not abuse its discretion by denying Loof a continuance.

■ Further, it does not appear from the record that Loof's claim of surprise by Lassen's testimony has merit. Lassen made one change in her deposition which foreshadowed her in-court testimony.[18] The passage in her deposition, as changed, was almost identical to her allegedly unexpected testimony at trial. Thus, we conclude that, with reasonable diligence,[19] Loof could have anticipated Mrs. Lassen's trial testimony from the change she made in her deposition. Having failed to establish genuine surprise, Loof was not entitled to a continuance.

## E. *Evidence of Loof's Alcohol Treatment*

Loof made an oral motion *in limine* to exclude evidence of his alcohol treatment at Kodiak Hope House. The superior court denied the motion for the following reasons: (1) it was relevant to the issue of maintenance; (2) it was relevant to Loof's earning capacity; (3) alcoholism may have affected Loof's ability to use the dock ladder; and (4) chronic alcoholism may have been the sole cause of Loof's accident.

Loof argues that the prejudice caused by the evidence outweighed its probative value. For purposes of the maintenance claim, he contends, the only relevant aspect of this evidence would be the cost of $27.50 per day to stay at Hope House, not where that cost was incurred. As to future earnings, Loof points out that his stay at Hope House did not prove he was a chronic alcoholic. He also argues that there was no evidence that he was alcoholic, nor that use of alcohol was relevant to his earning capacity.[20]

Sanders claims that the motion should have been in writing, more particularized, and submitted with a memorandum of authorities. He argues that since Loof made no objection to the references to Hope House at trial, the "miscarriage of justice" standard of review should apply. He also argues that Loof has no standing to appeal the references to Hope House because Loof himself referred to the treatment center during trial.

■ Loof appropriately objected to the admission of the Hope House evidence under Alaska Rule of Evidence 104(a).[21] This rule does not require the moving party to make the motion in writing. Nor did Loof's motion run afoul of the requirements of Civil Rule 7(b)(1), which provides in part:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity

---

18. Lassen changed a portion of her deposition to read:

> Q. What did Mr. Loof say happened?
> A. Well, he said he—this was very early in the morning, he had been drinking and had had too much to drink....

The change was made under oath and pursuant to Alaska R.Civ.P. 30(e), which provides in part:

> When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness....

Although Loof could have protested that Lassen gave no reasons for the change, he failed to do so, waiving any right he may have had to further examination of Lassen regarding the change. *See* 4A J. Moore, Moore's Federal Practice § 30.62, at 30–153 (2d ed. 1983).

19. *See Stude v. Madzo,* 217 N.W.2d 5, 10 (N.D. 1974).

20. Sanders introduced no evidence to support his other two theories of relevance, which would use Loof's alleged alcoholism to explain the accident itself. Those theories have been abandoned.

21. Alaska Rule of Evidence 104(a) provides in part:

> Preliminary questions concerning the ... admissibility of evidence shall be determined by the court, ....

the grounds therefor, and shall set forth the relief or order sought.

Loof's counsel requested the court to exclude the Hope House testimony at a hearing on several motions *in limine* made by the defendant, Sanders. Under such circumstances, a written motion was not required by Civil Rule 7. *See United States Fire Insurance Co. v. Schnabel,* 504 P.2d 847, 853 (Alaska 1972).

Turning to the merits of this specification of error, we note that *Poulin v. Zartman,* 542 P.2d 251, 260 (Alaska 1975), sets out the appropriate standard of review for evidentiary issues of this nature:

> A trial judge will only be reversed for admitting prejudicial, but otherwise relevant, evidence if he has committed a "clear abuse of discretion." ... Thus, we must first consider the relevance of the testimony and then determine whether its prejudicial effect so outweighed its probative value that admission by the trial judge constituted a "clear abuse of discretion."

(Citations omitted.)

■ We conclude that the superior court did not abuse its discretion by admitting evidence of Loof's treatment at Hope House. Loof's sojourn there was relevant to his maintenance claim. At the hearing on Loof's motion to exclude, Sanders argued through counsel that any obligation on his part to pay Loof maintenance should have terminated as of the date Loof entered Hope House, since his stay there was for reasons unrelated to the accident. Without ruling upon the merits of that contention, we note that even if Loof's right to maintenance had continued during his presence at Hope House, evidence of the daily rate he had paid for his lodging and treatment there would still be relevant to the total amount of maintenance owed.

The risks inherent in admitting such evidence, of course, are recognized and weighed not in the threshold inquiry into relevance, but in the subsequent balancing of relevance against prejudice, confusion, and waste of time, under Evidence Rule 403.[22] The commentary to Rule 403 provides:

> If the balance between probative value and prejudicial effect (signifying all of the factors discussed in this rule) is close, the Judge should probably decide to admit the evidence. In other words, there is a slight presumption in favor of admitting relevant evidence. In order to overcome this minimal presumption, the prejudicial effect must be demonstrably greater than the probative value of the evidence.

Thus, under the "abuse of discretion" standard of review in *Poulin* and under the presumption of admissibility governing the application of Evidence Rule 403, we will not lightly reverse the decision of a superior court to admit relevant evidence. Here we find no reason to reverse. Loof's counsel himself referred to Loof's Hope House sojourn both in his opening statement and in his closing argument. In addition, Loof called a supervisor from Hope House as a witness, and testified about his stay there himself. On balance, the evidence on Loof's stay at Hope House was not particularly prejudicial; his employment as a therapist there came out, as well as his successful abstinence from alcohol. Moreover, the references by Sanders' counsel to Loof's stay at Hope House were both brief and restrained. Whatever slight prejudice this evidence may have caused did not so outweigh its probative value that its admission by the superior court constituted a clear abuse of discretion. *Cf. Poulin,* 542 P.2d at 260.

AFFIRMED.

---

**22.** Evidence Rule 403 provides:
*Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.*
Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.