**BOWERS OFFICE PRODUCTS, INC., Appellant,**

v.

**UNIVERSITY OF ALASKA, Appellee.**

No. S–1986.

Supreme Court of Alaska.

May 13, 1988.

William R. Satterberg, Jr., Fairbanks, for appellant.

Thomas R. Wickwire, Fairbanks, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

In this case Bowers Office Products (Bowers) challenges the bid review practices of the University of Alaska (University). Bowers alleges that any dissatisfied bidder is entitled to a full hearing to determine the validity of its grievance. Bowers does not bring the case to redress its own grievance, but rather seeks prospective relief for future dissatisfied bidders. The superior court dismissed the case, holding that Bowers pled no case or controversy. Bowers appealed the dismissal to this court. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Bowers is a distributor of computers, office machines and other products which bids on invitations to furnish computer components to the University. The University rejected a Bowers' bid in favor of another supplier. Bowers maintained that it was the lowest bidder, and as a result was entitled to receive the bid award.

Bowers complained to the University and was sent a letter explaining the reasons for the bid award. Dissatisfied with the University's answer, Bowers requested that a hearing be held by the University to redress its grievance. The University's counsel reviewed Bowers' request and denied it. No further review procedures were provided for.

Following this denial, Bowers appealed to the superior court, primarily alleging (1)

a lack of due process regarding review of its grievance, and (2) that the University did not award the contract to the lowest bidder as required by Alaska law. On appeal to the superior court Bowers abandoned all claims for damages arising from the allegedly illegal contract award. Its prayer for relief asked only that the court "compel the University of Alaska, upon timely request by an aggrieved bidder, to, in all presently pending and future cases,[1] conduct the hearing required by AS 37.05.-240(a) [repealed January 1, 1988] and to conduct such hearing pursuant to the requirements of AS 44.62.330–.630.[2]" (Footnotes added.)

The superior court held that Bowers had "alleged no 'injury in fact' which would be remedied by the requested relief" and that there was "no actual case of controversy before the court." It dismissed the case.[3]

On appeal to this court the only issues presented are whether the superior court erred in (1) dismissing Bowers' administrative appeal, and (2) awarding attorney's fees to the University. The merits of Bowers' claim are not at issue.

## II. DISCUSSION

### A. THE SUPERIOR COURT DID NOT ERR IN DISMISSING BOWERS' ADMINISTRATIVE APPEAL.

■ The "case of controversy" basis for dismissal cited by the superior court is actually an umbrella doctrine encompassing many specific legal theories. Relevant to the case at bar are the theories of standing, mootness and ripeness. In addition, "case of controversy" is a term of art used to describe a constitutional limitation on federal court jurisdiction. But as this court has observed for many years, "Our mootness doctrine ... is a matter of judicial policy, not constitutional law." *RLR v. State,* 487 P.2d 27, 45 (Alaska 1971). The same is true of standing, *see Falcon v. Alaska Public Offices Comm'n,* 570 P.2d 469, 474–75 (Alaska 1977), and, by analogy, ripeness. Thus, instead of looking to federal courts, as Bowers has done, this court should first look to its own precedent and statutes.[4]

This court first discussed the standing requirement for maintaining an action for declaratory relief in Alaska in *Jefferson v. Asplund,* 458 P.2d 995 (Alaska 1969). There we wrote that "[b]oth Alaska's Declaratory Judgment Act and the federal act require 'a case of ... actual controversy' as a prerequisite for the grant of declaratory relief." *Id.* at 998. Then, in *Alaska Airlines v. Red Dodge Aviation,* 475 P.2d 229, 232 (Alaska 1970), we wrote: "The Alaska statute was modeled after the federal Declaratory Judgment Act, so federal precedent is pertinent."

In *Falcon v. Alaska Public Offices Comm'n,* 570 P.2d 469 (Alaska 1977), we recognized that standing was not a consti-

---

**1.** Bowers clearly states in its briefing that it is not requesting a hearing as to its bid to furnish computer parts. It wrote: "Prior to pursuing its appeal before the Superior Court, Bowers voluntarily dropped its claim for damages of a re-award of the contract as against the University." And: "Recognizing the problems with the University bid protest procedures, Bowers sought to have the overall objective addressed, and requested that the Superior Court simply review the procedures utilized by the University of Alaska to adopt proper procedures with respect to future bid protests...."

**2.** These statutes pertain to the merits of Bowers' arguments not at issue in this procedural appeal.

**3.** Bowers complains that the superior court raised the issue of mootness sua sponte. This argument is without merit. The court inherently possesses the power to request briefing on issues which come to its attention.

**4.** The relevant statute, AS 44.62.300, provides:

> *Court review.* An interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court. In addition to any other ground the court may declare the regulation invalid (1) for a substantial failure to comply with AS 44.62.010–44.62.320, or (2) in the case of an emergency regulation or order of repeal, upon the ground that the facts recited in the statement do not constitute an emergency under AS 44.62.250.

The statutory standard, which applies in this case, appears to be no more or less liberal than the common law standard. *Compare Trustees for Alaska v. State,* 736 P.2d 324 (Alaska 1987), *petition for cert. filed,* July 30, 1987 *with Rutter v. State,* 668 P.2d 1343 (Alaska 1983) *and Coghill v. Boucher,* 511 P.2d 1297 (Alaska 1973).

tutional limitation on the jurisdiction of Alaska courts as it is in federal law.

> [T]he federal constitutional standards of "case or controversy" require adversity and concreteness in order to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." Since the requirement of adversity is neither federally mandated nor required by the Alaska Constitution, the court's requirement of adversity as a component of standing is essentially a judicial rule of self-restraint. The court in *Wagstaff v. Superior Court, Family Div.*, 535 P.2d 1220, 1225 (Alaska 1975), adopted the "injury-in-fact" test to determine the requisite adversity.

*Falcon*, 570 P.2d at 475 (footnotes omitted).

Recently, in *Trustees for Alaska v. State, Dep't of Natural Resources*, 736 P.2d 324, 327 (Alaska 1987), *petition for cert. filed*, July 30, 1987, we continued to distinguish standing in Alaska from the federal standing doctrine. In that case taxpayers were granted standing to sue for declaratory judgment. We wrote:

> Standing in our state courts is not a constitutional doctrine; rather, it is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions. The basic requirement for standing in Alaska is adversity.
>
> The concept of standing has been interpreted broadly in Alaska. We have "departed from a restrictive interpretation of the standing requirement," adopting instead an approach "favoring increased accessibility to judicial forums." Our cases have discussed two different kinds of standing. One is interest-injury standing; the other is citizen-taxpayer standing.
>
> Under the interest-injury approach, a plaintiff must have an interest adversely affected by the conduct complained of. Such an interest may be economic, or it may be intangible, such as an aesthetic or environmental interest. The degree of injury to the interest need not be great; "'[t]he basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.'"
>
> In the instant case, the appellants assert that they have standing as citizens or taxpayers, rather than because their interests are injured. In prior cases, we have often permitted taxpayers or citizens, to challenge governmental action based on their status as taxpayers or citizens. In many such cases, standing has been assumed and not discussed.

*Trustees for Alaska*, 736 P.2d at 327 (citations omitted).

We think that *Trustees for Alaska* shows that we have expanded the standards enunciated in *Jefferson*. As a result, Alaska courts, using the interest-injury standard, are more open to litigants than federal courts.[5]

However, while Alaska's standing rules are liberal this court should not issue advisory opinions or resolve abstract questions

---

5. *See, e.g., Trustees for Alaska*, 736 P.2d at 327 n. 2 (cases cited wherein taxpayer standing was assumed); *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976) (where private citizens sought review of state's failure to consult with local agencies prior to sale of oil leases we wrote: "the concept of standing has been interpreted broadly in Alaska, favoring increased accessibility to judicial forums."); *State v. Lewis*, 559 P.2d 630, 634–36 (Alaska) (citizen/taxpayers allowed to challenge land transfer between state, federal government and native corporation), *cert. denied*, 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1073 (1977); *Coghill*, 511 P.2d at 1298–1300 (voters allowed to challenge voting regulation promulgated by lieutenant governor prior to election).

The term "interest-injury" is derived from Supreme Court cases, to be sure. In *Wagstaff*, this court discussed the need for an "injury-in-fact" as required by the Supreme Court in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 363 (1972). The court in *Wagstaff* quoted extensively from *SCRAP*, which case, Professor Tribe notes, "is reflective of a liberal standing approach currently out of favor...." Tribe, *American Constitutional Law* 118 n. 35 (2d ed. 1988). Professor Tribe also observes that "[i]t is clear, therefore, that the Court has selectively employed standing doctrine, and justiciability doctrines generally, to constrict the expansive access to federal courts previously enjoyed by litigants challenging governmental action." *Id.* at 110. Thus the interest-injury analysis of this court must have its own unique meaning in

of law. Rather, we should only hear cases in which a genuine adversarial relationship exists regarding an interest-injury. This rule ensures that the parties will energetically pursue their cases and present facts upon which the court can base its decision. The legislature has also determined that the party's interest in the litigation is pivotal to the standing question.[6] The question in the instant case then reduces to: Does Bowers have an interest sufficiently adversely affected to motivate it to pursue this lawsuit?

■ Bowers certainly had such an interest at one time. According to its Notice of Appeal and Statements of Points on Appeal, Bowers originally asked the superior court to find that the contract was not awarded to the lowest bidder. Had Bowers succeeded in proving its allegations it would have had the right to recover its bid preparation costs.[7] *See King v. Alaska State Hous. Auth.*, 633 P.2d 256, 262–63 (Alaska 1981) (holding that in Alaska agencies soliciting bids implicitly contract to give those bids fair consideration and damages may be awarded for breach of this implied contract). However, in the course of the superior court proceedings Bowers abandoned its claim for damages because the damages were "nominal." As a result, at the time of oral argument, Bowers only requested the prospective relief.

In *Rutter v. State*, 668 P.2d 1343, 1346 (Alaska 1983), we discussed the "interested person" criterion of AS 44.62.300.[8] In that case Rutter, a commercial fisherman, complained that the state was issuing too many fishing permits and as a result, Rutter's own commercial success would be jeopardized. We held that Rutter had standing to sue because Rutter's ability to fish commercially was directly affected by the number of permits issued.[9]

Bowers' argument that it is an "interested person" within the meaning of AS 44.-62.300 has merit; as a continuing bidder to the University, it will continue to be subjected to the rules it seeks to have reviewed. Like Rutter, Bowers has asserted an injury to its own economic interest. That injury is its ability to bid effectively on outstanding and future invitations from the University. This may represent a sufficient interest on Bowers' part to seek a declaratory judgment.

However, since Bowers initiated this proceeding a new state Procurement Code has taken effect. *See generally* AS 36.30.-005–.995 (effective January 1, 1988). This statute creates an exclusive remedy for "interested parties" protesting the state's award of a purchasing contract. *See* AS 36.30.560, .690 (effective January 1, 1988). It also transfers procurement authority to the Regents of the University and requires the Regents to adopt purchasing regulations. AS 36.30.005(c) (effective January 1, 1988). The Regents' authority must be exercised "in accordance with" the new

Alaska jurisprudence if Alaska standing doctrine is to retain its quality of relative openess.

**6.** AS 44.62.300 begins with the phrase "An interested person...." *See supra* note 4.

**7.** Bowers could also have requested that the award be enjoined. *See Jenson & Reynolds v. State, Dep't of Transp.*, 717 P.2d 844, 846 (Alaska 1986).

**8.** *See supra* note 4.

**9.** In *Rutter* we wrote:
In this case, Rutter is "interested" in the number of permits issued, for his ability to fish commercially is directly affected by the number of trollers using the fishery. The parties agree that issuing 2,150 permits will necessarily result in gear restrictions and management closures, rendering Rutter's trade less profitable. That Rutter will obtain a permit does not

alleviate his concern, for he is concerned that too many *other* applicants will also obtain permits.
688 P.2d at 1346 (emphasis in original).
Subsequent to our decision in *Rutter*, we decided *Haynes v. State, Commercial Fisheries Entry Comm'n*, 746 P.2d 892 (Alaska 1987). *Haynes* involved fisheries and standing issues similar to *Rutter*. However, in *Haynes* we held that the plaintiff failed to meet the interested person criterion because the relief he requested would, taken to its logical conclusion, not benefit but rather harm his interests. *Haynes*, 746 P.2d at 896. Thus the *Haynes* analysis is inapposite to the case at bar.
In *Haynes* we also observed that action by the legislature subsequent to our decision in *Rutter* had effectively rejected our decision regarding the fisheries issue presented in *Rutter*. 746 P.2d at 894. The legislature's action did not, however, affect our resolution of the standing issue presented in *Rutter*.

Procurement Code and their regulations must be "substantially equivalent to the regulations adopted by the commissioner of administration." AS 36.30.005(c) (effective January 1, 1988). We cannot assume that either the new Code or the Regents' authority will be applied in such a way as to violate the due process rights of bidders. As a result, this case is not ripe for adjudication until an injury is asserted to have occurred, or prospectively will occur to an interested party, under the new Code.[10]

## B. ATTORNEY'S FEES.

Bowers claims that attorney's fees were improperly awarded to the University because this is public interest litigation. We articulated criteria identifying public interest litigation in *Alaska Survival v. State Dep't of Natural Resources*, 723 P.2d 1281 (Alaska 1986). One of the necessary criteria is "whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance." *Id.* at 1292 (quoting *Oceanview Homeowners Assoc. v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 (Alaska 1984)). Clearly Bowers had sufficient economic interest in obtaining a bid award from the University to file the underlying suit. Therefore, Bowers is not a public interest litigant and, failing to satisfy the criteria for this exception, attorney's fees were appropriately awarded to the University.

## III. CONCLUSION

For the reasons discussed above, the decision of the superior court is AFFIRMED.[11]

---

**10.** This case does not fall under the general public interest exception to the mootness doctrine. *See Rutter*, 668 P.2d at 1346. That exception is for issues "of grave public concern [that are] recurrent but [ ] capable of evading review, ..." *Alaska Transp. Comm'n v. Gandia*, 602 P.2d 402, 403 (Alaska 1979) (quoting *Doe v. State*, 487 P.2d 47 (Alaska 1971)). *See also Etheredge v. Bradley*, 502 P.2d 146, 153 (Alaska 1972).

**11.** This court may affirm a decision on grounds different than those advanced by the trial court so long as the record supports our resolution. *Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 758 (Alaska 1983).