Linda W. MYERS, Representative for Sidney Lee Robertson, Jr., deceased, Special Administratrix for the Estate of Sidney Lee Robertson, Jr., deceased, and Special Guardian for Stephen M. Robertson, a minor, Appellant,

v.

Sidney L. ROBERTSON, Sr., Terri A. Robertson, and Allstate Insurance Company, Appellees.

ALLSTATE INSURANCE COMPANY, Cross–Appellant,

v.

Linda W. MYERS, Representative for Sidney Lee Robertson, Jr., deceased, Special Administratrix for the Estate of Sidney Lee Robertson, Jr., deceased, and Special Guardian for Stephen M. Robertson, a minor,

and

Sidney L. Robertson, Sr., and Terri A. Robertson, Cross–Appellees.

Nos. S–4661, S–4673.

Supreme Court of Alaska.

March 10, 1995.

Olof K. Hellén, Hellén & Accinelli, Anchorage for appellant (S–4661) and cross-appellee (S–4673) Linda W. Myers.

Theodore M. Pease, Jr. and Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellees (S–4661) and cross-appellees (S–4673) Robertson.

Ronald L. Bliss and Maryanne Boreen, Bliss Riordan, Anchorage, for appellee (S–4661) and cross-appellant (S–4673) Allstate.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J., pro tem.*

## OPINION

MOORE, Chief Justice.

### I. *Introduction*

This intra-family lawsuit arises from the accidental death of a thirteen year old boy, Sidney Robertson, Jr. The minor's estate, along with the child's brother Stephen (the "Estate"), sued the boys' parents, Sidney Robertson, Sr. and Terri Robertson ("the Robertsons"), on a theory of negligence. The parents' insurer, Allstate Insurance Co. ("Allstate"), appointed counsel to defend the Robertsons. However, based on Allstate's belief that the Robertsons' true interest was in losing the lawsuit so that they could recover the insurance proceeds paid to the Estate, Allstate later intervened in the case as a party defendant. Allstate participated at trial outside the jury's presence, and the jury was not informed of its existence as the real party in interest. The jury found that, although the Robertsons were negligent, their conduct was not the legal cause of their son's death.

The Estate appeals, claiming that Allstate's interest in the case should have been disclosed to the jury. Allstate cross-appeals, arguing that the case should have been dismissed for lack of adversity and on public policy grounds.

We conclude that several rulings of the trial court were erroneous, but that the errors were harmless. Therefore, we uphold the jury's verdict.

### II. *Facts and Proceedings*

In June 1988, the Robertsons were living in a single family residence in Anchorage with their two sons, Sidney, Jr., then age 13, and Stephen, then age 9. The Robertsons had plans to attend a special event at an Anchorage museum for the evening of June 23, 1988. They decided to leave the children at home for the few hours they would be gone. To entertain the boys, the Robertsons

left them some VCR movies, including a skateboard movie called "Thrasher."

Following their parents' departure, Sidney, Jr. and Stephen watched "Thrasher." After the movie, Sidney, Jr. went to the garage, where Terri Robertson had parked the family's 1981 Triumph TR–7. At the back of the garage, the Robertsons stored a skateboarding ramp that they had given Sidney, Jr. for his birthday one month earlier.

The parties dispute the following series of events. Allstate argues that the TR–7 was securely parked, in gear, with the emergency brake engaged and the garage door closed. Allstate asserts that Sidney, Jr. opened the garage door, released the car's parking brake and intentionally attempted to move the TR–7 so that he could skateboard in the garage. The Estate suggests that the Robertsons had negligently left the garage door open, left the TR–7 out of gear and failed to repair the car's nonfunctioning emergency brake. As a result, when Sidney, Jr. tried to skateboard around the car, he unintentionally caused it to begin rolling.

In either event, it is clear that at some moment the TR–7 began rolling backward down the Robertsons' steep incline driveway. Sidney, Jr. ran behind the car, apparently trying to stop it from rolling into the street. The TR–7 eventually backed into another car parked across the street from the Robertson home, pinning Sidney, Jr. between the two cars. Sidney, Jr. later died as a result of his injuries. Stephen witnessed the accident.

Several months after Sidney, Jr.'s death, the Robertsons consulted with attorney Olof Hellén regarding the extent of their insurance coverage for the accident. Hellén's law firm reviewed the Robertsons' insurance policies and advised the Robertsons to designate a close friend as representative of Sidney, Jr.'s estate and as special guardian of Stephen. The firm further advised the Robertsons to retain their own counsel, since Sidney, Jr.'s estate and Stephen would bring a lawsuit against them and that, in the event of a recovery by Sidney, Jr.'s estate, the Robertsons ordinarily would receive the proceeds as their son's heirs in intestacy.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

### Course of Proceedings

The Robertsons arranged for Linda Myers, a family friend, to act as the representative of Sidney, Jr.'s estate and as Stephen's special guardian for the purposes of this litigation. The Robertsons waived any conflicts of interest, and Olof Hellén undertook representation of the Estate. The Estate filed this action against the Robertsons in December 1988, alleging that the Robertsons were negligent in (1) possessing a driveway with an unsafe incline, and (2) failing to properly secure their Triumph TR–7 in their garage.

Due to its duty to defend the claim against the Robertsons, Allstate appointed the law firm of Hughes, Thorsness, Gantz, Powell & Brundin ("Hughes, Thorsness") to represent the Robertsons. Hughes, Thorsness filed a motion to dismiss the Estate's claims based on the public policy that negligent parties should not benefit from their wrongful conduct. Hughes, Thorsness argued that, because the Robertsons were the sole beneficiaries of Sidney, Jr.'s estate, they would be monetarily rewarded if they negligently caused their son's death.[1] The Estate opposed the motion; it then moved to disqualify the Robertsons' counsel on the grounds that the motion to dismiss was contrary to the Robertsons' interests in losing the case.

Before the court ruled on the Estate's motion to disqualify, Hughes, Thorsness withdrew as defense counsel for reasons unrelated to this case. The law firm of Guess & Rudd substituted as defense counsel. However, Guess & Rudd subsequently withdrew due to an "irreconcilable conflict of interest" between it and the Robertsons.

Following Guess & Rudd's withdrawal, the Estate moved for an order to protect the Robertsons by requiring that Guess & Rudd's files be transferred to the Robertsons and not to Allstate. Allstate then intervened in the case as a party defendant, asserting that the Estate was advancing the real interests of the Robertsons, who were not adverse to its claims. Based on the conflicting interests between Allstate and the Robertsons, the trial court ordered that Allstate appoint independent counsel to represent the Robertsons. It further ordered that independent counsel not report to Allstate. In compliance with this order, Allstate retained Theodore Pease, Jr. of Burr, Pease & Kurtz, with the Robertsons' consent and the court's approval, to defend the Robertsons.

Allstate moved to dismiss the Estate's claims under Alaska Civil Rule 12(b)(1), arguing that the lack of genuine adversity between the Estate and the Robertsons deprived the court of subject matter jurisdiction. Allstate alternatively moved to dismiss under Civil Rule 12(b)(6), arguing that the Estate's claims could not succeed due to the public policy barring the Robertsons from benefitting from their negligent conduct by obtaining the proceeds of Sidney, Jr.'s estate.[2]

The court denied Allstate's motion, and the case proceeded to trial. With the court's approval, Allstate elected not to participate at trial during the jury's presence. The court also approved Allstate's motion to prevent any reference to insurance during trial, except for limited questions during jury selection.

During trial, the Robertsons testified in a manner which sometimes suggested that they took responsibility for negligently causing their son's death. For instance, Terri Robertson testified that both she and her husband knew that the TR–7's emergency brake had never worked, and that they were negligent in failing to repair it. She also disputed that she told the police on the night of the accident that she had closed the garage door and left the TR–7 in gear before going out. Sidney Robertson, Sr. testified that the TR–7's emergency brake had never worked.

---

1. Because Sidney, Jr. had no dependents, any recovery for wrongful death would be paid to his estate. AS 09.55.580(a); *In re Estate of Pushruk*, 562 P.2d 329, 332 (Alaska 1977). That amount would then flow back to the Robertsons as Sidney, Jr.'s heirs in intestacy under AS 13.11.015(2).

2. This motion pertained only to the claims by Sidney, Jr.'s estate. There is no dispute that Stephen Robertson's claims for emotional trauma and loss of consortium were properly before the court.

The Robertsons' counsel, Theodore Pease, then impeached his clients' credibility with their prior statements, made either to the police or in depositions, which suggested that the TR–7 could not have begun rolling unless Sidney, Jr. first opened the garage door, took the car out of gear and released the parking brake. By this impeachment, and through closing argument, defense counsel suggested to the jury that the Robertsons' emotional pain led them to take responsibility for their son's death, even when such responsibility was inappropriate.

The Estate objected on the Robertsons' behalf, arguing that Mr. Pease's impeachment was contrary to the Robertsons' interests. The court overruled the objection, stating that, for sufficient adversity to exist, defense counsel must present "a classic defense in the sense that [the goal is] to make sure that his clients are not found liable."

In argument over jury instructions, Allstate again raised the adversity issue. On Mr. Pease's proposal, the court instructed the jury that the Robertsons were the heirs to Sidney, Jr.'s estate. Mr. Hellén again objected that it was improper for defense counsel to propose such an instruction because the instruction was contrary to the Robertsons' interests. The court found that sufficient adversity existed because Mr. Pease was properly representing the Robertsons as defendants, not as plaintiffs. Similarly, the court held that Mr. Pease could argue in closing that Sidney, Jr.'s own negligence had caused his injuries and death, even if the Robertsons did not want this argument to be made because they did not believe it was true.

The jury determined that the Robertsons were negligent but that their negligence was not the legal cause of Sidney, Jr.'s death. The court subsequently entered judgment in favor of the Robertsons and Allstate.

## III. *Discussion*

### A.

We first address the issues raised by Allstate's cross-appeal since they go to the court's jurisdiction. Allstate asserts that the case should have been dismissed because there was never any genuine adversity between the Estate and the Robertsons.

### 1. *Adversity and Subject Matter Jurisdiction* [3]

Allstate contends that the trial court had no subject matter jurisdiction over this case since the Robertsons and the plaintiff had identical interests. Most notably, the Robertsons would receive any recovery by Sidney, Jr.'s estate as his sole beneficiaries in intestacy. *See supra* note 1. Moreover, because the Robertsons prompted the plaintiff's initiation of this suit, Allstate argues that Linda Myers is only a figurehead. According to Allstate, the Robertsons are the real plaintiffs and are in essence suing themselves.

In discussing the standing requirement, this court has stated that an Alaska court has no subject matter jurisdiction unless the lawsuit before it presents an actual controversy involving a genuine relationship of adversity between the parties. *Trustees for Alaska v. State, Dept. of Natural Resources,* 736 P.2d 324, 329–30 & n. 9 (Alaska 1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2013, 100 L.Ed.2d 601 (1988); *Wagstaff v. Superior Court,* 535 P.2d 1220, 1225 (Alaska 1975). Adversity insures that parties will energetically pursue their opposing positions and present facts necessary for the fair resolution of the case. *Bowers Office Prods., Inc. v. University of Alaska,* 755 P.2d 1095, 1098 (Alaska 1988). Accordingly, adversity constitutes the basic requirement for standing in Alaska. *Trustees for Alaska,* 736 P.2d at 327.

This court has also held that children have a right to bring lawsuits against their parents for negligently inflicted injuries. *Hebel v. Hebel,* 435 P.2d 8, 15 (Alaska 1967) (no parental immunity bar to an unemancipated minor's negligence action against a

---

**3.** Adversity is a basic requirement of standing, which is subject to *de novo* review. *See Bowers Office Prods., Inc. v. University of Alaska,* 755 P.2d 1095, 1096–98 (Alaska 1988) (whether there is a genuine adversity so as to meet the standing requirement, is reviewed *de novo* as part of the doctrine of judicial restraint).

parent). Thus, there is no *per se* failure of adversity simply because this lawsuit arises from an alleged intra-family tort. In *Hebel*, this court specifically recognized the potential for collusive intra-family litigation designed to defraud insurance carriers but determined that this danger "does not warrant denial of a remedy to the child." *Id.* at 12. It further stated:

> "Since the insurer is the real defendant, it has been said that there is danger of fraud and collusion between parent and child. One may not, of course, deny the hazard, but *such a danger, being present in all liability insurance cases, furnishes reason not for denial of a cause of action, but for added caution on the part of court and jury in examining and assessing the facts.*"

*Id.* (quoting with approval *Badigian v. Badigian*, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 42, 174 N.E.2d 718, 723 (1961) (Fuld, J., dissenting)) (emphasis added).

Similarly, in *Aydlett v. Haynes*, 511 P.2d 1311 (Alaska 1973), this court noted that intra-family tort litigation can pose special problems due to the existence of insurance. In *Aydlett*, a wife sued her husband to recover for injuries caused by the husband's negligence. The court recognized that, in ordinary personal injury litigation, an insurer and a defendant-insured usually have a common interest in avoiding liability. *Id.* at 1315 n. 8. However, in intra-family litigation, the interests of the insured may conflict with those of the insurer since the insured may have a financial interest in seeing the plaintiff prevail. For this reason, the court stated, "[W]here the case involves an intra-family tort action, the trial judge must take care to assure that the actual interests of all parties are fairly represented." *Id.*

 In light of *Hebel* and *Aydlett*, there is no merit to Allstate's contention that the Estate's claims against the Robertsons were not actionable and should be precluded as a matter of law.[4] *See also Drickersen v. Drickersen*, 604 P.2d 1082 (Alaska 1979) (husband's suit against wife on behalf of injured child could lie). Rather, as these cases indicate, the action may proceed. However, the trial court must exercise added caution to insure that the potentially conflicting interests of an insurer and its insured are fairly represented. This is precisely what Judge Fabe did.

Consistent with the obligations imposed under *Hebel* and *Aydlett*, the court required counsel for the Robertsons to further the Robertsons' interests in this case as *defendants*, not as plaintiffs. Although placed in a sometimes awkward position, Mr. Pease conscientiously and effectively presented the Robertsons' defense.[5] Further protecting the interests of all parties, the court appropriately required that the Robertsons' defense counsel be independent from Allstate in the sense that Mr. Pease would not report to Allstate. By these actions, the court struck a balance between the Estate's right to sue and Allstate's right to an adversarial defense. Because this case involved an adversarial relationship, the trial was not a sham and was properly allowed to proceed.[6]

---

4. Moreover, it is well-settled in this state that, as the Robertsons' liability insurer, Allstate was not a proper party defendant at trial. *Severson v. Estate of Severson*, 627 P.2d 649, 651 (Alaska 1981) (direct actions against an alleged tortfeasor's liability insurer are not permitted in Alaska).

5. Allstate argues that defense counsel's adversarial posture could not cure the lack of adversity in this case because counsel had no control over the manner in which the Robertsons would color the facts. However, even assuming that the Robertsons tried to give testimony which would favor the Estate, the result in this case belies Allstate's claim. Defense counsel effectively handled the Robertsons' defense and procured a jury verdict in favor of the Robertsons and Allstate.

6. Given the trial court's actions to preserve the integrity of the proceedings in this case, sufficient adversity existed to allow the case to proceed even without Allstate's intervention. Therefore, Allstate's intervention did not cure a lack of adversity or create sufficient adversity for the case to proceed. Allstate's ultimate decision to intervene, to further insure adequate representation of its interests, is simply one more circumstance indicating that adverse interests were fairly litigated in this case. *But cf.* 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3530 at 319 (2d ed. 1984) ("a case conceived in cooperation may be saved by intervention of a genuine adversary").

While Allstate recognizes the general rule that intra-family litigation is permissible, it claims that this case is distinguishable from other Alaska intra-family tort cases because the Robertsons stand to gain 100% of any recovery paid to Sidney, Jr.'s estate. Allstate urges us to find that, in situations where the defendants' pecuniary interests are identical to those· of the plaintiff, the defendants are in fact the "real plaintiffs". Under this reasoning, the Robertsons are in essence suing themselves, so there is no adversity and no subject matter jurisdiction.

Allstate cites several cases from other jurisdictions in support of this argument. These decisions adhere to the view that the administrator of a decedent's estate is not the real party in interest to the estate's wrongful death action; the real party in interest is the beneficiary to whatever recovery is obtained by the estate. Therefore, if the defendant is also the sole beneficiary of the estate, he must be considered both plaintiff and defendant, and no action will lie. *See Dishon's Administrator v. Dishon's Administrator*, 187 Ky. 497, 219 S.W. 794, 795 (1920) (no cause of action under Kentucky's wrongful death statute when defendant is the sole beneficiary of plaintiff-estate because the wrongdoer would be both defendant and real plaintiff); *Glucksman v. Strelecki*, 102 N.J.Super. 53, 245 A.2d 228, 231–32 (1968) (granting summary judgment against plaintiff-estate because defendant, sole beneficiary of estate, was real party in interest and effectively acted as both plaintiff and defendant); *Davenport v. Patrick*, 227 N.C. 686, 44 S.E.2d 203, 205–06 (1947) (administrator of estate had no wrongful death cause of action against decedent's tortfeasor-husband who was sole beneficiary of wife's estate); *Carver v. Carver*, 310 N.C. 669, 314 S.E.2d 739, 743 (1984) (reiterating the *Davenport* rule in dicta).

These cases also rely on the public policy that no person should profit from his or her own wrongdoing. This principle provides that it would be incongruous to permit an estate to recover damages, when the sole beneficiaries of that award are the same people who negligently caused the injury in the first place. *See Carver*, 314 S.E.2d at 745; *Dishon's Administrator*, 219 S.W. at 795; *Glucksman*, 245 A.2d at 232. However, a negligence action may proceed if there exist beneficiaries to the estate other than any negligent beneficiaries. *See Carver*, 314 S.E.2d at 744–45. In such situations, the non-negligent beneficiaries may recover their shares of any damages paid to the estate. Any negligent persons who otherwise would be beneficiaries are precluded from obtaining any part of the estate's recovery based on public policy considerations. *Id.*

 Whether the beneficiaries to an estate are in fact the "true plaintiffs" in a wrongful death action by the estate is a question of first impression in Alaska. We conclude that, where any recovery by the estate would not be paid directly to specified individuals, the beneficiaries to the estate should not be considered the plaintiffs. Therefore, there is no jurisdictional bar to an administrator's negligence action against parties who might otherwise stand to benefit from their wrongdoing.

 In resolving this issue, we look to Alaska's wrongful death statute, AS 09.55.580.[7] It states that, in the event the decedent left no spouse, children or other dependents, any recovery for wrongful death will be paid to the decedent's estate. The recovery does not go directly to any specified beneficiaries. The proper beneficiaries of the estate can be determined subsequent to the estate's recovery. For this reason, the beneficiaries of an intestate estate are not the "true plaintiffs" in an action by the es-

**7.** At the time of Sidney, Jr.'s accident, AS 09.55.580 stated in relevant part:

(a) When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefore against the latter, if the former might have maintained an action, had the person lived, against the latter for an injury done by the same act or omission....

The amount recovered, if any, shall be exclusively for the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other dependents. When the decedent is survived by no spouse or children or other dependents, the amount recovered shall be administered as other personal property of the decedent but shall be limited to pecuniary loss.

tate. The plaintiff is the administrator, on behalf of the estate, which is distinct from its beneficiaries.[8]

■ Our conclusion is supported by precedent under Oregon law.[9] In *Oviatt v. Camarra*, 210 Or. 445, 311 P.2d 746 (1957), the Oregon Supreme Court interpreted Oregon's wrongful death statute and determined that an estate is distinct from its beneficiaries when any recovery would be paid to the estate, not to the beneficiaries directly. We find this aspect of *Oviatt* persuasive, and therefore adopt it as the rule in Alaska. *See also* W. Keeton, *Prosser and Keeton on the Law of Torts*, § 127 at 958 (5th ed. 1984) (under wrongful death acts where any damages are recoverable on behalf of decedent's estate, the estate is considered distinct from its beneficiaries).

In this case, there is no dispute that any wrongful death recovery by the administrator would be paid to Sidney, Jr.'s estate. The determination of eligible beneficiaries to that award is a question arising subsequent to the jurisdictional issue. We therefore address it as a matter of public policy apart from the adversity question. Accordingly, we believe the trial court properly asserted subject matter jurisdiction over this litigation. The real question is whether, had the Estate been successful on its claims, the Robertsons should forfeit their right to inherit any part of Sidney, Jr.'s estate. We address this question as a matter of public policy.

### 2. *Public policy*

Allstate contends that the Estate's claims should have been dismissed based on the public policy preventing wrongdoers from benefitting from their own negligence. Relying substantially on *Oviatt v. Camarra*, 210 Or. 445, 311 P.2d 746 (1957), the trial court disagreed and concluded that there would be no public policy bar in Alaska to the Robertsons' recovery of damages awarded to Sidney, Jr.'s estate through intestate succession.

While we agree with Allstate as to its public policy concerns,· we do not agree that dismissal would be the appropriate means of resolving those concerns. We therefore depart from *Oviatt* in our analysis of this issue. The *Oviatt* court determined that the administrator of a deceased child's estate could bring a negligence action even though the administrator herself was both an heir to the estate and contributorily negligent in causing the child's death. 311 P.2d at 750–51. It also held that there was no public policy bar to a negligent party's recovery of wrongful death proceeds through intestate succession. *Id.*

■ In our view, the better policy precludes a negligent party from obtaining any part of a damage award, so that the negligent party will not benefit from his or her wrongdoing. This is true whether the negligent person would have benefitted directly, as a specified beneficiary under the wrongful death statute, or indirectly through intestate succession. In this respect, our decision is consistent with several cases cited by Allstate.[10] *See, e.g., Carver*, 314 S.E.2d at.

---

8. Under this rule, there also would be no jurisdictional bar to an administrator's survival action, which would be brought on behalf of the decedent, since any damages will be paid to the estate to be distributed according to law. *See* AS 09.55.570.

 However, if the defendants in this action were the decedent's spouse, children or other dependents, a slightly different analysis is warranted. Because AS 09.55.580 directs that any recovery in wrongful death would be maintained exclusively for those specified individuals, they could be considered the "real plaintiffs" in an action by the estate. *See Ditty v. Farley*, 219 Or. 208, 347 P.2d 47, 52 (1959). However, as discussed *infra*, our public policy would preclude any negligent parties from recovery. Therefore, in such situations, there may be no *per se* failure of subject matter jurisdiction. The designated beneficiaries

under the wrongful death act would be prevented from benefitting from any recovery, and the award would be distributed according to the intestacy scheme or other applicable probate law.

9. Alaska's original wrongful death statute adopted a modified version of Oregon's wrongful death act. The two statutes are compared in *Kulawik v. ERA Jet Alaska*, 820 P.2d 627, 631 n. 8 (Alaska 1991).

10. It is also consistent with the policy view declared by the Alaska Legislature. The state legislature has provided that persons who feloniously kill another may not benefit from their actions either by obtaining any proceeds of a wrongful death recovery, AS 09.55.580(f), or by inheriting

744–45; *Davenport,* 44 S.E.2d at 205; *Glucksman,* 245 A.2d at 232.

In implementing this policy, however, we do not follow the example set forth in many of the cases cited by Allstate. Many of those decisions reduce the damage award paid to the estate by the pro rata share otherwise payable to the negligent party. *See, e.g., Carver,* 314 S.E.2d at 744. In contrast to these cases, we do not believe the award to Sidney, Jr.'s estate should be reduced simply because certain beneficiaries are no longer eligible to recover any proceeds. Rather, we believe that any ineligible beneficiaries should be considered to have renounced their right to recover. The proceeds of the estate would then be distributed in a manner consistent with AS 13.11.295, regarding renunciation of intestate succession rights. Thus, for purposes of distributing any proceeds awarded to Sidney, Jr.'s estate, the Robertsons should be considered to have predeceased their son, and the entire award may be distributed to any other existing and eligible statutory heirs. *See* AS 13.11.295(c).[11]

In summary, we affirm the trial court's decision regarding adversity and the court's subject matter jurisdiction over this action. The Robertsons were not the plaintiffs in this action, and the Estate's claims were properly permitted to go forward. We reverse the court's ruling regarding the Robertsons' eligibility as beneficiaries of any recovery by Sidney, Jr.'s estate. However, since the jury's verdict was in favor of the defendants, there is no need for further action on this issue.

## B.

In its appeal, the Estate claims that the trial court erred in allowing Allstate to participate at trial outside the jury's presence and in prohibiting any reference to insurance during trial. It contends that, once Allstate intervened, the trial court was required to clarify the alignment of the parties in the case so that the jury would not misunderstand the true interests of all parties. The Estate further contends that the Robertsons' counsel represented Allstate's interests at trial instead of the Robertsons'. It argues that this fact tainted the entire trial because counsel presented a case at odds with the Robertsons' view of events and improperly suggested to the jury that counsel's own clients could not be believed. The jury was therefore unfairly prejudiced against the Robertsons, which damaged the Estate's interest in having the jury fully consider their trial testimony.

The Estate frames these arguments in constitutional terms, claiming that the court's rulings violated its right to due process under the Alaska Constitution. It also argues that the rulings accorded insurance companies special status, thereby depriving the Estate of equal protection under the law. We disagree that the trial court's rulings violated any of the Estate's constitutional rights. However, we agree with the argument that, in intra-family negligence actions such as the present case, the jury should be informed of an insurer's status as the real party in interest in order to avoid confusion and prejudice against either the plaintiffs or defendants. Despite this conclusion, we believe that the failure to inform the jury of Allstate's presence in this case was harmless error, and we uphold the jury's verdict.

### Disclosure of Allstate's interest

In *Severson v. Estate of Severson,* 627 P.2d 649 (Alaska 1981), this court held that direct actions against liability insurers are not permitted in Alaska. The Estate does not argue that *Severson* should be overruled. Instead, it contends that once Allstate voluntarily intervened in the case, it was required to disclose its presence to the jury. This argument relies in part on Justice Dimond's concurring opinion in *Drickersen v. Drickersen,*

through intestate succession. AS 13.11.305. Our decision today extends the policy expressed by these provisions in a manner that is compatible with the legislature's stated intentions.

11. We recognize that this rule may result in a windfall for the other eligible heirs. This possibility has also arisen in other circumstances and is not inconsistent with the language of our wrongful death statute. *See Kulawik v. ERA Jet Alaska,* 820 P.2d 627, 637–38 & n. 21 (Alaska 1991).

604 P.2d 1082 (Alaska 1979). *Drickersen* involved an intra-family lawsuit arising from an automobile accident in which the defendant-mother's insurance company was the real party in interest. In holding that good faith questioning of prospective jurors regarding insurance connections was permissible, a majority of this court chose not to address whether the presence or absence of liability insurance should have been made known to the jury. *Id.* at 1085.

 In his concurring opinion, Justice Dimond argued that the insurer's role as the real party in interest should have been disclosed. He stated that, because jurors on the whole are aware of the widespread existence of laws requiring automobile liability insurance, they would assume that a child's lawsuit against her mother involved insurance. He concluded:

> In a suit against the mother brought by a child, the insurance company is a real party in interest. I submit that this fact should be honestly faced and that the presence or absence of liability insurance should be divulged to the jury in cases such as this one. It is time to remove from the law the fiction that a child suing her mother for vast sums of money really intends to burden her mother with a resulting judgment, and to collect on the judgment from whatever assets the mother might have.

*Id.* at 1089.

Justice Dimond's point is well taken, and we now adopt it as the rule in intra-family lawsuits such as the one at issue here. That is, regardless of whether Allstate had intervened in this action, we believe its interest should have been disclosed to the jury. Without explaining the basic alignment of the parties, and the Robertsons' role as purely nominal defendants, there was a risk of confusing the jurors and unfairly prejudicing them against the plaintiff. In reaching this result, we do not overrule *Severson* or alter the basic proposition that the existence of

insurance is irrelevant to the issue of negligent or wrongful conduct. *See* Alaska R.Evid. 411. We simply conclude that, in cases such as this, the jury should be provided with some context in order to fully and fairly evaluate the case and the testimony before it. Here, the fact of insurance could have been admitted consistent with Evidence Rule 411 because that information would tend to show the potential bias or prejudice of the Robertsons as witnesses.

 Despite this conclusion of law, Allstate correctly points out that, to prevail on appeal, the Estate bears the burden of showing prejudicial error. *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984). To do so, the Estate must demonstrate that the failure to disclose Allstate's interest had a substantial influence on the outcome of the case. *Id.* To assess the effect of this error, this court must put itself in the position of the jury to determine whether the omission probably affected the verdict. *Id.* (citing *Love v. State*, 457 P.2d 622, 631 n. 15 (Alaska 1969)).

 In our view, the Estate has not carried its burden of showing prejudice. Although it raises a speculative possibility of prejudice, the Estate has not convinced us that the failure to disclose Allstate's interest probably affected the verdict. In reviewing the record, we specifically recognize the trial court's substantial efforts to preserve the integrity of the trial, and we see no evidence of jury confusion or undue prejudice against either the Estate or the Robertsons. The record indicates that, over the course of the trial, the jury heard abundant evidence to support the conclusion that Sidney, Jr. intentionally attempted to move the car, and that the Robertsons were not the legal cause of their son's injuries. The Estate's arguments do not convince us that the evidence would have been interpreted substantially differently if Allstate's presence had been disclosed. For this reason, we conclude that the error was harmless, and the jury's verdict should be affirmed.[12]

---

12. The Estate also asserts that there was reversible error arising from the Robertsons' counsel's presentation of a case to the jury that sometimes questioned the Robertsons' trial testimony and views on liability. The Estate further claims that the trial court erred in denying its motion for a mistrial after the Robertsons advised the court that they disagreed with their attorney's theory of the case. We decline to address these claims since the Estate has not explained how it has any

## IV. Conclusion

In sum, we affirm the trial court's decision regarding adversity and subject matter jurisdiction. However, we note that, had the Estate recovered any damages in this case, the Robertsons could not receive any benefit from that award through intestate succession or otherwise, due to the public policy preventing negligent parties from benefitting from their negligent acts. We acknowledge the validity of the Estate's argument regarding disclosure of an insurer's interest in intra-family tort actions such as the present one. For this reason, we believe that in this limited context the jury should be informed of an insurer's interest in order to prevent any undue confusion or prejudice against the parties. Despite this conclusion, we do not believe that disclosure of Allstate's interest in this action would have affected the jury's verdict. Therefore, the failure to inform the jury of Allstate's presence was harmless error.

The verdict is AFFIRMED.

COMPTON, Justice, with whom BRYNER, Justice, pro tem, joins, dissenting in part.

## I. Introduction

In *Drickersen v. Drickersen,* 604 P.2d 1082 (Alaska 1979), Justice Dimond advocated that:

> In a suit against a mother brought by a child, the insurance company is the real party in interest. I submit that this fact should be honestly faced and that the presence or absence of liability insurance should be divulged to the jury in cases such as this one. It is time to remove from the law the fiction that a child suing

her mother for vast sums of money really intends to burden her mother with a resulting judgment, and to collect on the judgment from whatever assets the mother might have.

*Id.* at 1089 (Dimond, J., concurring). Fifteen years later this court adopts Justice Dimond's view as the law of this jurisdiction. I agree with the court that when the presence of liability insurance creates irreconcilable conflicts of interest between the insurer and insured, the fact of liability insurance coverage should be disclosed to the jury. However, Justice Dimond's view, considered in conjunction with intervening decisions of this court, mandates a broader holding. In the case before us, it also requires a different result. The trial court defined the Robertsons' interests for them and dictated their attorney's strategy. As a result, the Robertsons were denied representation by an attorney independent in fact, and also were prevented from expressing untainted views in the adjudication of their own interests. Had the Robertsons been represented by the *CHI* counsel,[1] to which they were entitled, the jury's verdict probably would have been different. Hence, substantial error exists. Furthermore, substantial error also exists simply because of the failure by the trial court even to disclose the conflicting interests to the jury.

## II. The Trial Court Denied the Robertsons Counsel Who Was Independent in Fact, Which Resulted in Their Interests Going Unrepresented.

In *CHI of Alaska, Inc. v. Employer's Reinsurance Corp.,* 844 P.2d 1113 (Alaska 1993), this court held that when there is an irreconcilable conflict between the insured

---

standing to assert the Robertsons' alleged rights with respect to their relationship with Mr. Pease.

1. In order to differentiate clearly between the different types of legal representation implicated in this case, the following terms will be used.

CHI counsel. An attorney who is selected by the insured and who controls the defense litigation when there is an irreconcilable conflict of interest between the insured and the insurer. This attorney is "independent in fact." This type of representation was both recognized and required by this court in *CHI of*

*Alaska, Inc. v. Employer's Reinsurance Corp.,* 844 P.2d 1113 (Alaska 1993).

Independent counsel. The attorney who was selected by and paid for by the insurer, Allstate, to represent the insureds, the Robertsons. This attorney did not report to Allstate. At trial this attorney, in accordance with the instructions of the trial court, presented "a classic [insurance] defense" that was designed to avoid liability.

Personal counsel. An attorney who was retained and paid for by the Robertsons to advise them during the proceedings; he had no active role in the litigation.

and the insurer, "the insured should have the unilateral right to select ... counsel." *Id.* at 1121. The court noted that this view is in accord with that of most states. *Id.* at 1117. In making this observation, the court cited cases from a number of jurisdictions and the remarks of commentators. " 'The prevailing view is that the presence of a [conflict] issue enables the *insured* to reject appointed counsel, select his own lawyer and *control the defense* at the expense of the insurer.' " *Id.* at 1117 n. 8 (quoting Ronald E. Mallen, *A New Definition of Insurance Defense Council*, Ins.Couns.J., Jan. 1986, at 108, 113) (emphasis added). " '[T]he attorney who represents the insured owes him an *undeviating allegiance* whether compensated by the insurer or the insured....' " *Id.* at 1116 (quoting *Farmers Ins. Co. of Ariz. v. Vagnozzi,* 138 Ariz. 443, 675 P.2d 703, 708 (1983)) (emphasis added). The rationale compelling the result in *CHI* was the recognition that the interests of the insurer may not be coextensive with those of the insured. Therefore, the insured is entitled to an attorney who is independent of the insurer's interests in fact. Inherent in the notion of *CHI* counsel is the premise that the attorney owes undeviating allegiance to the client. Yet in this case the court reneges on its promise in *CHI.* The Robertsons were deprived of an attorney with undeviating allegiance to their cause, and the independent-in-fact representation that *CHI* counsel is to provide. The necessity of undeviating allegiance is a special concern in this case, which is a paradigm of conflicting interests that inevitably undermine independent counsel's undeviating allegiance.

This court has noted previously the legitimate problem often present in intra-family tort litigation: the interests of the insured tort-feasor and the insurer may be in conflict. *Aydlett v. Haynes,* 511 P.2d 1311, 1315 n. 8

(Alaska 1973). Accordingly, we have stated that in such a case "the trial judge must take care to assure that the actual interests of all parties are fairly represented." *Id.* at 1315 n. 8. This case demands this special precaution. The "fiction" that troubled Justice Dimond in *Drickersen* was that one family member was suing another with the intent of collecting a judgment from that relative. In reality it is the insurer that will pay the judgment, and the family unit or a member of the family unit that will collect it. Therefore, in a case of intra-family litigation, there are typically three sets of conflicting interests: (1) those of the injured person, here the Estate, that wants to establish liability in order to obtain a judgment, (2) those of the insurer, who wants to escape the imposition of some or all of this liability, and (3) those of the insured family member.

The insured family member may have purchased the insurance policy for a variety of reasons, just as insurance is marketed on a variety of bases. One reason, and basis, may have been to ensure that the family will be able to compensate adequately a victim of a family member's tortious conduct. This motivation may be particularly strong where the insured has a close personal relationship with the victim. Therefore, as in the case of the Robertsons, it may be in the interest of the insured family member to be found *liable.*[2]

Despite the Robertsons' desire to pursue such a goal, the trial court prevented the Robertsons' independent counsel from so doing. Instead, the trial court directed Allstate to retain independent counsel for the Robertsons. The trial court then ordered independent counsel to present "a classic [insurance] defense" designed to avoid Allstate's liability. This goal was in keeping with the interests of Allstate, but not necessarily those of the Robertsons.[3] While the trial judge recog-

---

**2.** As we indicated in our opinion in *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967), in a lawsuit among family members there is a danger of fraud and collusion of which the jury must be aware. *Id.* at 12. In the instant case, this danger is present. Ultimately, it could be the insureds that stand to gain monetarily from the Estate's collection of any award. Therefore, I also concur in the court's conclusion that negligent tort-feasors should be prevented from sharing in any award that results from their conduct.

**3.** It should be noted that the proceedings leading to the trial court's instructions to independent counsel occurred before our decision in *CHI of Alaska, Inc. v. Employer's Reinsurance Corp.,* 844 P.2d 1113 (Alaska 1993). Hence the trial judge and the Robertsons' independent counsel were acting without the guidance of that opinion. Therefore, although the trial court's instructions were in apparent accordance with the law as it existed at that time, later case law demands a

nized the unusual alignment of parties often present in intra-family tort litigation, she distinguished between the Robertsons' independent counsel representing his clients as plaintiffs versus defendants. The judge stated that the Robertsons were not their independent counsel's "clients as plaintiffs. They're his clients as defendants.... [I]f that *defense* were not being provided [by the Robertsons' independent counsel] there could be concern with regard to adversity to the extent that his clients wanted this lawsuit to proceed."[4] (Emphasis added.) These conflicting interests were so strong that throughout the entire case the Robertsons retained personal counsel to advise them in dealings with independent counsel, who was representing them in the proceedings. Otherwise stated, the Robertsons were compelled to retain an attorney to advise them on how to deal with the attorney who ostensibly was advocating their interests!

In its motion to intervene in the proceedings, Allstate itself implicitly recognized this conflict, acknowledging that "this suit [by the Estate] is advancing the *real* interests of the Robertsons." (Emphasis added.) However, in the same motion Allstate also argued that "[t]he lawyer representing the Robertsons as defendants clearly cannot represent the Robertsons' interests as plaintiffs."[5] The trial court, *in ordering independent counsel for*

the Robertsons and directing him to conduct "a classic [insurance] defense," did so

> because of the ... inherent potential for conflict given ... the participation of the Robertson[s] in their defense, that ... counsel who reported directly to Allstate could be in a position of on one hand representing the Robertson[s] and on the other hand establishing some kind of policy defense based on non-cooperation.

It further did so in order to ensure that Allstate did not have access to information that it could later use against the Robertsons. But these are only two facets of the potential harm this court attempted to guard against in *CHI*. We also recognized that the insured's attorney "should have full access to the client so that the defense may be effectively conducted." *CHI*, 844 P.2d at 1119. The *CHI* court concluded that the ability of the insured's attorney to control the litigation, independently of the insurer's desires, was critical. *See id.* 1117–18.

In the instant case, the trial court could have pursued an alternate approach that would have acknowledged the obvious adversity, and ensured that *all* interests were represented without the conflict. Under such a scheme, three attorneys would independently advocate the interests of the plaintiff, the

different approach to the difficulties encountered and a different result.

4. Despite the conflicts of interest in this case and the trial court's recognition of the unusual alignment of parties, the approach utilized fails to consider the correspondingly unique interests that are frequently pursued in insurance litigation. For example, when insureds threaten an insurer with a bad faith refusal to settle a plaintiff's claim, it may be in the best interests of the insureds to confess judgment, assign the bad faith claim to the plaintiff, and permit the plaintiff to bring the bad faith claim against the insurer. In such a situation, the insureds require *CHI* counsel to advise and represent them. Clearly such representation would involve decisions that are not compatible with the interests of the insurer. Nevertheless, the proceedings would involve the adversity necessary for the trial court to have jurisdiction.

5. The court makes a statement which, in context, is startling. In the section of the opinion entitled *Disclosure of Allstate's Interest*, the court remarks on Justice Dimond's concurrence in *Drickersen:*

> Justice Dimond's point is well taken, and we now adopt it as the rule in intra-family lawsuits such as the one at issue here. That is, regardless of whether Allstate had intervened in this action, we believe its interest should have been disclosed to the jury. Without explaining the basic alignment of the parties, and *the Robertsons' role as purely nominal defendants*, there was a risk of confusing the jurors and unfairly prejudicing them against the plaintiff.

Op. at 208 (emphasis added).

If the Robertsons were purely nominal defendants, a characterization with which I agree, then Allstate was the real defendant. Thus Allstate's argument about adversity, or lack of adversity, borders on frivolous. Worse, the trial court's attempt to protect the Robertsons' interest by ordering Allstate to appoint independent counsel for them lacks any substance. Independent counsel's very competent representation of the nominal defendants was in fact representation of the real defendant, Allstate, which was engaged in a shell game to keep its identity hidden from the jury.

insurer and the insured.[6] Based on this court's decision in *CHI*, it would have been permissible for the Robertsons, through *CHI* counsel, to pursue their own interests. They were required only to comply with their contractual obligation to cooperate with their insurer, and not breach any implied covenant of good faith and fair dealing.

In this case, however, the trial court directed the Robertsons' independent counsel to present a case that advocated the interests of Allstate. This approach resulted in substantial error. As this court repeatedly notes, in the course of following these instructions the Robertsons' independent counsel was forced to intentionally impeach his own clients' testimony, testimony that indicated that they took responsibility for negligently causing their son's death. This impeachment was intended to destroy the Robertsons' credibility with the jury. In a case where the testimony of the Robertsons was critical, the effect of this taint cannot be underestimated. Because of the trial court's instructions, the Robertsons were denied *CHI*'s mandate of an attorney independent-in-fact and its inherent promise: the undeviating allegiance of one's own attorney and the ability to control the defense. In spite of this court's previous admonition that care must be taken "to assure that the actual interests of all the parties are fairly represented," the Robertsons' perspective was not

heard. Had the Robertsons' testimony not been impeached by their attorney, it is not difficult to see that the jury's verdict probably would have been different. Therefore, substantial error exists. *See Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984) (In order to assess if an error is substantial, " 'the members of this court must necessarily put themselves ... in the position of the jury to determine whether, as reasonable men, the error committed probably affected their verdict.' " (quoting *Love v. State*, 457 P.2d 622, 631 n. 15 (Alaska 1969)).

This court's opinion also has troublesome implications beyond the instant case. The failure to hold that *CHI* counsel should have been retained to pursue the Robertsons' interests permits a continuation of the "fiction" that Justice Dimond warned against in *Drickersen*. *See Drickersen*, 604 P.2d at 1088–89 (Dimond, J., concurring). If separate counsel is not available to represent *each* set of conflicting interests, our warning to "take care to assure that the actual interests of *all* parties are fairly represented," *Aydlett v. Haynes*, 511 P.2d 1311, 1315 n. 8 (Alaska 1973) (emphasis added), will have gone unheeded.[7] Yet despite these two separate, significant concerns regarding the Robertsons' lack of *CHI* counsel, the court is content to dismiss these problems summarily in a footnote.[8] Op. at 208–09 n. 12.

---

6. See *infra* note 7 and accompanying text.

7. The *open*, honest and independent advocacy on behalf of each set of conflicting interests would result in more informed jury deliberations. The critical evidence is more likely to be identified when attorneys, representing separable interests, individually advocate these positions.

The situation before the court also leads me to reiterate the position that I expressed in dissent in *CHI of Alaska, Inc. v. Employer's Reinsurance Corp.*, 844 P.2d 1113, 1129–31 (Alaska 1993) (Compton, J., dissenting). The scheme that I advocated there, with individual counsel for the plaintiff, the insured and the insurer, permits each set of conflicting interests to be advocated. *CHI*'s approved method does not permit the insurer to have its interests separately advanced by its own counsel; hence, the concerns of the insurer may go unrepresented.

8. The court's rationale for its summary rejection of this argument is the Estate's alleged failure to substantiate a basis for standing to assert these

claims; the court reasons that if any harm has been suffered, it is the Robertsons' and not the Estate's. Op. at 208–09 n. 12. Yet the court recognizes the existence of the adversity necessary to permit the Estate to bring a claim against the Robertsons. Op. at 204. At the same time, the court also cites, Op. at 203–04, *Trustees for Alaska v. State, Department of Natural Resources*, 736 P.2d 324 (Alaska 1987) *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2013, 100 L.Ed.2d 601 (1988), for the proposition that adversity is "[t]he basic requirement for standing in Alaska." *Id.* at 327. *Trustees* also provides that for a plaintiff to have standing, the degree of injury "need not be great; ' "[t]he basic idea ... is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.' " ' " *Id.* at 327 (quoting *Wagstaff v. Superior Court, Family Court Div.*, 535 P.2d 1220, 1225 n. 7 (Alaska 1975)).

The Estate has demonstrated more than the mere "trifle" that is sufficient to confer standing. As the court agrees, the Estate has suffered a

### III. Failure to Disclose to the Jury the Insurer's Interests Also Constitutes Substantial Error.

A basis for finding substantial error, however, goes beyond the representation issue since Allstate's interests and role in the litigation were not divulged to the jury. Allstate's covert participation undermines the foundation for the acceptance of intra-family tort liability in this state. This court first recognized this cause of action in *Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967). In *Hebel* the court addressed the argument that family harmony would be destroyed by permitting one family member to bring an action against another for damages. The court, as did Justice Dimond in *Drickersen*, 604 P.2d at 1089 (Dimond, J., concurring), concluded that because most families carry insurance that will pay the damage award, the concern over the degradation of the familial relationship was not a determinative complication that barred the cause of action. *Hebel*, 435 P.2d at 12 ("[A]lthough the existence of liability insurance does not create liability its presence is of considerable significance...."). As this court notes, Op. at 204, the *Hebel* court observed,

> "Since the insurer is the real defendant, it has been said that there is a danger of fraud and collusion between the parent and child. One may not, of course, deny the hazard, but such a danger, being present in all liability insurance cases, furnishes the reason not for denial of a cause of action, but *for added caution* on the part of

court and *jury* in examining and assessing the facts."

*Id.* (quoting *Badigian v. Badigian*, 9 N.Y.2d 472, 215 N.Y.S.2d 35, 42, 174 N.E.2d 718, 723 (1961) (Fuld, J., dissenting)) (emphasis added). The jury in this case, in spite of this need for "added caution," was left to speculate on the existence or non-existence of liability insurance. As a result, it may have been concerned that the Robertsons did not carry liability insurance and that a damage award could potentially disrupt the family unit. *See Drickersen*, 604 P.2d at 1085. Furthermore, it seems indisputable that the jury did not know of, much less understand, the active role of a second attorney who also was representing Allstate: he was concealed from view. Instead, the jury was left with the image of an attorney who impeached the credibility of his own clients. If the jury had been informed of the conflicting interests at stake, their verdict probably would have been different. This too provides a basis for finding substantial error.

### IV. Conclusion

The court concludes that the Estate has not proved prejudice by the trial court's failure to disclose Allstate's interest. It "recognize[s] the trial court's substantial efforts to preserve the integrity of the trial," and suggests that the "record indicates that, over the course of the trial, the jury heard abundant evidence to support the conclusion that Sidney, Jr. intentionally attempted to move the car." Op. at 208. The court is not convinced

---

harm of sufficient proportion to bring suit against the Robertsons. The Robertsons' lack of *CHI* counsel prejudiced the *Estate's* case, because the jury witnessed the Robertsons' own attorney impeach his clients' testimony, thereby devaluing evidence that was crucial to the Estate's case. Furthermore, at the direction of the trial court, the Robertsons' attorney presented the case in a manner that emphasized the interests of Allstate, not those of the Robertsons. The jury's apparent confusion surely obstructed them in their fact-finding role; this also prejudiced the Estate's case. Therefore, the prejudice to the Estate seems sufficient to confer standing to raise the issue of Robertsons' lack of *CHI* counsel.

The unique context of intra-family tort litigation also presents another basis for finding that the Estate had standing to pursue this issue of appeal. The Robertsons believed themselves legally responsible for their son's death, which

belief, if accepted by the jury, would have resulted in a judgment that would have been paid by Allstate. The trial court prevented them from advocating that position, by instructing independent counsel to present "a classic [insurance] defense." The Robertsons have never received the *CHI* counsel their insurer is obligated to provide. As a result, the Estate now appeals based upon prejudice to its case. This situation was caused by the trial court, which defined the Robertsons' interests for them. Since the Robertsons "prevailed" based on the trial court's perception of their interests, they are unable to appeal the decision. Who would raise the issue on their behalf? Surely not the attorney who was ordered to present "a classic [insurance] defense." If the Estate cannot raise the issue, the Robertsons' interests in having *CHI* counsel will have gone entirely unrepresented throughout the proceedings.

214

that "the evidence would have been interpreted substantially differently if Allstate's presence had been disclosed."[9] Op. at 208. What the court declines to do is engage in any debate regarding the issue of the "abundant evidence" presented by independent counsel in accordance with the trial court's instructions. This "abundant evidence" entailed impeaching the credibility of the Robertsons, offering an instruction which did not advance their interests, and generally presenting "a classic [insurance] defense" case. This court claims that the Estate has no standing to "assert the Robertsons' rights" regarding Allstate's shell game, which left Allstate with one attorney at bar and another behind the door, and yet it cites not one jot or tittle of authority for the proposition. In this particular way the trial court erred in its order regarding independent counsel, its instructions to independent counsel, and its definition of the Robertsons' interests. Were this court to undertake such debate, I suggest it could not reach the same result.

I would remand the case to superior court for re-trial with (1) the Robertsons represented by an attorney of their choice, subject to the *CHI* qualification, whose undeviating allegiance would be to the Robertsons and pursuit of their interests, (2) the existence of liability insurance disclosed to the jury and (3) the open participation of Allstate's attorney.

9. Allstate apparently felt differently. Not surprisingly, in its motion to intervene as a party defendant, Allstate, immediately after "respectfully request[ing] that it be permitted to intervene as a party defendant," explicitly refused to "concede that it must necessarily be present at the trial of this case or that the jury must necessarily be told about the presence of insurance."